## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **COLUMBUS BANK AND TRUST COMPANY, doing business as SYNOVUS LEASING COMPANY,** | * | |
| | * | **Case No. 07-00803** |
| Plaintiff, | * | |
| vs. | * | |
| **SOUTH ALABAMA SLEEP CENTERS, INC.; SHAKIR R. MEGHANI; MANTRUST, INC., also known as MANTRUST OF ALABAMA, INC., doing business as SOUTHEAST PSYCHIATRIC SERVICES; MUSTAFAIN MEGHANI; and SYED HUSSAIN,** | * | |
| Defendants. | * | |

### PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT

Plaintiff Columbus Bank and Trust Company, doing business as Synovus Leasing Company, requests the Clerk to enter default against the Defendants South Alabama Sleep Centers, Inc.; Shakir R. Meghani; Mantrust, Inc., also known as Mantrust of Alabama, Inc., doing business as Southeast Psychiatric Services; and Syed Hussain, for their failure to plead, answer or otherwise defend, as set out in the affidavits of Howard Samsky, attached as Exhibit "A," and Lawrence B. Voit, Plaintiff's counsel, attached as Exhibits "B" and "C."

Lawrence B. Voit          VOITL-4988
ASB-4988-I53L
SILVER, VOIT & THOMPSON
Attorneys at Law, P.C.
4317-A Midmost Drive
Mobile, Alabama  36609-5589
Telephone: 251/343-0800
Fax:  251/343-0862
e-mail: lvoit@silvervoit.com
LS-7494-12670/lmm

Attorneys for Plaintiff

A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

COLUMBUS BANK AND TRUST    *
COMPANY, doing business as
SYNOVUS LEASING COMPANY,    *

    Plaintiff,    *

vs.    *

SOUTH ALABAMA SLEEP CENTERS,    *
INC.; SHAKIR R. MEGHANI;
MANTRUST, INC., also known as    *
MANTRUST OF ALABAMA, INC.,
doing business as SOUTHEAST    *
PSYCHIATRIC SERVICES;
MUSTAFAIN MEGHANI; and SYED    *
HUSSAIN,
   *
    Defendants.

Case No. 07-00803

## AFFIDAVIT OF HOWARD SAMSKY

STATE OF GEORGIA
COUNTY OF MUSCOGEE

    1. My name is Howard Samsky, and I am Vice President of Columbus Bank and Trust

Company, doing business as Synovus Leasing Company ("Synovus"). My office is located at 1124

Broadway, Columbus, Georgia 31901. I am familiar with the books and records of Synovus, and

they are maintained under my custody and control. I am familiar with the records maintained by

Synovus in connection with its account with South Alabama Sleep Centers, Inc. ("SASCI"). All of

the documents attached to this affidavit as exhibits are true and correct copies of documents which

are maintained as business records in connection with that account at our bank.

    2. Synovus, as lessor, entered into a written Master Equipment Lease Agreement dated as

of January 31, 2005 with SASCI, as lessee ("the Master Lease")(copy attached as Exhibit 1).

    3. Pursuant to the Master Lease, Synovus leased to SASCI certain personal property.

Schedule 1 dated January 31, 2005 (copy attached as Exhibit 2), and Schedule 2 dated April 13, 2005

(copy attached as Exhibit 3), both of which refer to specific property leased by Synovus to SASCI,

were executed pursuant to the Master Lease.

4. The property leased by Synovus to SASCI pursuant to Schedule 1 (Exhibit 2) is more particularly described in attached Exhibit 4[1], and the property leased by Synovus to SASCI pursuant to Schedule 2 (Exhibit 3) is more particularly described in attached Exhibit 5.[2]

5. Pursuant to a written Guaranty Agreement dated February 7, 2005 (copy attached as Exhibit 6), Mantrust, Inc., also known as Mantrust of Alabama, Inc., doing business as Southeast Psychiatric Services, unconditionally guaranteed to Synovus the prompt and satisfactory performance of SASCI of all covenants, agreements, and obligations contained in the Master Lease.

6. Pursuant to a written Guaranty Agreement dated February 7, 2005 (copy attached as Exhibit 7), Shakir R. Meghani unconditionally guaranteed to Synovus the prompt and satisfactory performance of SASCI of all covenants, agreements, and obligations contained in the Master Lease.

7. SASCI defaulted under the terms of the Master Lease and Schedules 1 and 2 by failing to make one or more payments of rent when due. A breach of the Master Lease has therefore occurred creating a default, and the default has not been cured. Synovus has declared a default, accelerated the balances due, and made written demand for all rentals due and owing under the Master Lease. The rental arrearage as of August 16, 2007 was $3,588.45. Per diem rental for all the equipment is $113.96. The per diem rental for the Schedule 1 equipment only is $49.47. Synovus advanced $1,035.87 for 2007 personal property tax on the equipment, and this sum is chargeable to the lessee as additional rental.

---

[1] The same document is Exhibit 1 to the Complaint.

[2] The same document is Exhibit 2 to the Complaint.

2

8. The balances which are due and owing as of September 21, 2007 are as follows:

| | |
|---|---|
| Schedule 1 | $55,119.05 |
| Schedule 2 | $77,571.11 |
| Personal Property Tax | $1,035.87 |
| Subtotal as of 9/21/07 | $133,726.03 |
| Per diem rent 9/22/07 to 11/14/07 at $113.96 | $6,039.88 |
| Total due as of 11/14/07 | $139,765.91 |

9. Based on my review of the market for used equipment similar to the equipment leased by Synovus to SASCI, it is my opinion that the fair market value of the equipment described in Schedule 1 (Exhibit 2) is $11,700.00.

10. Based on information provided by Defendant Syed Hussain to my office, the said Defendant was in possession for more than one year, and remains in possession or control, of the property described in Schedule 1 (Exhibit 2). He is therefore additionally liable to Synovus for damages for detention of the Schedule 1 equipment, consisting of the August 16, 2007 rental arrearage of $1,557.77, plus per diem rental of $49.47 from August 16 to November 14, 2007 in the sum of $4,452.30, for total detention damages of $6,010.07.

11. Synovus has incurred attorney's fees and expenses in connection with enforcing its rights under the Master Lease. Those fees and expenses are further described in the affidavit of Lawrence B. Voit, counsel for Synovus.

_____, V.P

Howard Samsky, *V.P.*

Sworn to and subscribed before me
on this the _15th_ day of November, 2007

_____
Notary Public
My Commission Expires: _____

Jason A. Capps
Notary Public
Muscogee County
State of Georgia
My Commission Expires Jan. 17, 2010

3

EXHIBIT
1
tabbies®

 **SYNOVUS LEASING COMPANY**

**SYNOVUS LEASING COMPANY**
**MASTER LEASE AGREEMENT NO. 0001110**

This Master Lease Agreement ("Master Lease") is made and entered into by Lessor and Lessee as of 1/31/05 (the "Effective Date"), by and between:

**LESSOR:**          Synovus Leasing Company
                     1124 Broadway
                     Columbus, Georgia 31901
and

**LESSEE:**          South Alabama Sleep Center, Inc.
                     548 Westgate Parkway
                     Dothan, AL 36303

**PRELIMINARY STATEMENTS**

This Master Lease is written in "Plain English". When we use the words *you* and *your* in this Master Lease, we mean *you*, our *customer*, which is the *Lessee* indicated above. When we use the words *we*, *us*, and *our* in this Lease, we mean the *Lessor*, indicated above. Synovus Leasing Company is a registered trade name of Columbus Bank and Trust Company.

We desire to lease the Equipment (as defined later in this Lease) to you, and you desire to lease the Equipment from us, all in accordance with the terms and conditions contained in this Master Lease.

Accordingly, for and in consideration of the above premises and the covenants contained in this Master Lease, and other good and valuable consideration, receipt of which is acknowledged, the parties agree as follows:

1.    **LEASE, DELIVERY AND ACCEPTANCE.** You agree to lease the equipment (collectively "Equipment") listed on each Schedule of Leased Equipment (a "Schedule") substantially in the form attached hereto as Exhibit B as may be executed from time to time by the above parties. Each Schedule shall expressly incorporate the terms of this Master Lease and shall constitute a separate lease along with any other writing expressly incorporated into the Master Lease or the Schedule. The terms "Lease" or "this Lease" as used herein shall refer to each and every Schedule that incorporates this Master Lease Agreement and any other related writing expressly incorporated into the Lease by such Schedule. In the event of any conflict between the Lease and a Schedule, the terms of the Master Lease will control. We will not execute or accept any Schedules if you are not in compliance with all representations and warranties contained in this Master Lease or if an event of Default has occurred and is continuing. Notwithstanding the foregoing, we will have no obligation at any time to execute or accept any Schedules. If you have entered into any purchase or supply contract ("Supply Contract") with any manufacturer, vendor or supplier (a "Supplier"), you assign to us your rights under such Supply Contract, but none of your obligations (other than the obligation to pay for the equipment if it is accepted by you as stated below and your timely delivery to us of such documents and assurances as we request). If you have not entered into a Supply Contract, you authorize us to enter into a Supply Contract on your behalf. You acknowledge that you have selected or will select the type, quantity and supplier of each item of Equipment designated in the appropriate Schedule, and acknowledge that you have made, or will make, the selection based on your own judgment and that we have not participated in any way in said selection, manufacture or supply of the Equipment. You will arrange for the delivery of the Equipment to you. When you receive the Equipment, you agree to inspect it to determine if it is in good working order. This Lease will begin on upon the earlier of (a) the delivery to us of a signed Delivery and Acceptance Certificate (if requested by us); or (b) 10 days after the date which we determine a substantial portion of

the Equipment has been delivered to you if previously you have not given written notice to us of your non-acceptance (either date, the "Acceptance Date").  You authorize us to adjust the Rent and other payments due if the actual Cost of Equipment (which is all amounts we have paid in connection with the purchase, delivery and installation of the Equipment, including any trade-up and buy out amounts) differs from the estimated Cost of Equipment provided however that we shall not adjust the Rent and other payments by more than 10% without your written consent.  If, before either (a) or (b) occurs, we make any interim or progress payment(s) to Supplier in accordance with any Supply Contract or some other similar contract or agreement between you and Supplier, you unconditionally agree to pay us all such amounts paid by us to Supplier including applicable interest.

2.     **NON-CANCELLABLE LEASE.**  **THIS IS A NON-CANCELLABLE LEASE.**  You agree that, as of the Acceptance Date, each Schedule shall be **NON-CANCELLABLE** and that your obligation to pay any and all amounts due under the terms of each such Schedule promptly when due is **ABSOLUTE AND UNCONDITIONAL,** shall not be subject to cancellation, termination, modification or repudiation by you, and shall be paid and performed by you without notice or demand and without any abatement, reduction, diminution, setoff, defense, counterclaim or recoupment whatsoever, including but not limited to: (i) any past, present or future claims that you may have against us or any manufacturer, supplier, or vendor of any Equipment, or any other person or entity whatsoever; (ii) any defect in the title, condition, design, or operation of, or lack of fitness for use of, or any damage to, or loss of, all or any part of the Equipment from any cause; (iii) the existence of any liens on the Equipment; (iv) the invalidity, unenforceability or disaffirmance of this Lease or any document related to this Lease; (v) the prohibition of or interference with the use or possession by you of all or any part of the Equipment, for any reason whatsoever, including without limitation, by reason of: (A) claims for patent, trademark or copyright infringement; (B) present or future governmental laws, rules or orders; (C) the insolvency, bankruptcy or reorganization of any person; and (D) any other cause whether similar or dissimilar to the above, any present or future law to the contrary notwithstanding.  In no event will your obligations under this Lease be excused or suspended by reason of strikes, embargoes, riot, war, acts of hostility, storm, fire, earthquake, acts of God or any other cause or event including, but not limited to, frustration of purpose, impracticability or impossibility. **YOU MAY NOT CANCEL THIS LEASE.  YOU MAY NOT MAKE ANY FULL OR PARTIAL PREPAYMENTS WITH RESPECT TO SUMS DUE HEREUNDER.  WE MAY, AT OUR OPTION: (A) RETURN ANY PAYMENTS YOU MAKE IN EXCESS OF THE AMOUNT THEN DUE; OR (B) HOLD ANY SUCH EXCESS PAYMENTS IN ESCROW TO BE APPLIED TO YOUR FUTURE OBLIGATIONS, IN WHICH CASE WE MAY COMMINGLE SUCH ADVANCE PAYMENTS WITH OTHER FUNDS AND THE ADVANCE PAYMENTS WILL NOT BEAR INTEREST.**

3.  **TERM AND RENT.**  The term for each Schedule will begin upon the earlier of: (a) the Acceptance Date, or (b) the Commencement Date (as set forth in the applicable Schedule).  Interim rent from the Acceptance Date to the Commencement Date shall be due and payable in accordance with the Schedule. The term for each Schedule ends on the end of the Base Term (as set forth in the applicable Schedule) subject to Section 15.  As rental for the Equipment you agree to pay us the rent specified in the applicable Schedule (the "Rent") at such address as we may specify in writing.  If you should fail to pay any part of the Rent, or any other sum required to be paid to us, within ten (10) days after the due date, you will pay us a late charge not to exceed 7% of each late payment (or such lesser rate as is the maximum rate allowable under applicable law).

4.  **NO WARRANTIES.**  We are leasing the Equipment to you "AS-IS", YOU ACKNOWLEDGE THAT WE DO NOT MANUFACTURE THE EQUIPMENT, WE DO NOT REPRESENT THE MANUFACTURER OR THE SUPPLIER, AND YOU HAVE SELECTED THE EQUIPMENT AND SUPPLIER BASED UPON YOUR OWN JUDGMENT AND YOU EXPRESSLY DISCLAIM RELIANCE UPON ANY STATEMENT OR REPRESENTATION BY US.  <u>WE DO NOT MAKE, AND HEREBY DISCLAIM,  ANY WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE.</u> YOU AGREE THAT REGARDLESS OF CAUSE, WE ARE NOT RESPONSIBLE FOR AND YOU WILL NOT MAKE ANY CLAIM AGAINST US FOR ANY DAMAGES, LOSSES OR EXPENSES WHETHER CONSEQUENTIAL DIRECT, SPECIAL, OR INDIRECT (INCLUDING WITHOUT LIMITATION ANY CLAIM BASED ON STRICT OR ABSOLUTE LIABILITY AND ANY CLAIM FOR LOSS PROFITS).  YOU AGREE THAT NEITHER SUPPLIER NOR ANY SALESPERSON, EMPLOYEE OR AGENT OF SUPPLIER IS OUR AGENT OR HAS ANY

AUTHORITY TO SPEAK FOR US OR TO BIND US IN ANY WAY AND THAT NEITHER WE NOR ANY OF OUR EMPLOYEES OR AGENTS ARE AGENTS OF THE SUPPLIER OR BROKER. NO DEFECT, DAMAGE OR UNFITNESS OF THE EQUIPMENT FOR ANY PURPOSE SHALL RELIEVE YOU OF THE OBLIGATION TO PAY RENT OR RELIEVE YOU OF ANY OTHER OBLIGATION UNDER THIS LEASE. So long as you are not in default under this Lease, we transfer to you for the term of this Lease any warranties made by the manufacturer or Supplier under a Supply Contract. You agree that you will not assert against us any claim or defense that you have against the Supplier.

5. **EQUIPMENT LOCATION; USE AND REPAIR; RETURN.** You will keep and use the Equipment only at the Equipment Location shown on the Schedule. You may not move the Equipment without our prior written consent. At your own cost and expense, you will keep the Equipment in good operating order and condition in the manner for which it was designed and intended in accordance with any and all manufacturer's recommendations and in compliance with all applicable laws, regulations and insurance requirements, except for ordinary wear and tear. You will not make any alterations, additions or replacements to the Equipment without our prior written consent. You agree to secure, at your sole cost and expense, all permits, licenses or other documentation which may be necessary for the use or operation of the Equipment. All alterations, additions and replacements will become part of the Equipment and our property at no cost or expense to us. We may inspect the Equipment at any reasonable time. Unless you purchase the Equipment in accordance with this Lease, at the end of this Lease you will immediately deliver the Equipment to us in as good condition as when you received it, except for ordinary wear and tear, to any place in the United States that we tell you. You will pay all expenses of deinstalling, crating and shipping, and you will insure the Equipment for its full replacement value during shipping.

6. **TAXES AND FEES.** Unless otherwise provided in the Schedule or other documentation, **WE WILL FILE ALL TAX RETURNS AND INVOICE YOU DIRECTLY.** Notwithstanding the foregoing, we may: (a) upon sixty (60) days prior written notice, require you to file all tax returns in accordance with procedures satisfactory to us; and/or (b) upon thirty (30) days prior written notice, require you to pay Impositions (as hereinafter defined) directly to the taxing authority irrespective of whether we or you originally filed the tax return (in which case you shall provide us with verification of payment in the form of a cancelled check, a tax payment receipt or other verification in form and substance satisfactory to us). Notwithstanding the foregoing, you are responsible for all Impositions, we are under no obligation to contest any Impositions and we will have no liability to you with respect to any Impositions or filing. You further agree that we may invoice you for estimated property taxes with each payment of Rent or annually, in our sole and absolute discretion. As used herein, the term "Impositions" shall mean any and all use, excise, gross receipts, privilege, personal property and other taxes relating to this Lease or the Equipment that are now or in the future assessed or levied by any state, local or other governmental authority and any and all fines and penalties relating to any of the foregoing.

7. **LOSS OR DAMAGE.** You are responsible for any loss, theft or destruction of, or damage to, each and every item of Equipment (a "Casualty") from any cause at all, whether or not insured, until it is delivered to us at the end of this Lease. Even if there is a Casualty, you are required to make all payments (including, without limitation, payments of Rent) and to comply with, and perform in accordance with, all of you other obligations under this Lease. You must notify us in writing immediately of any Casualty. Then, at our option, you will either (a) repair the Equipment so that it is in good condition and working order, eligible for any manufacturer's certification, or (b) if in our judgment any item of Equipment is determined by us to be lost, stolen, destroyed or damaged beyond repair, you will pay us the "Casualty Value" (as hereinafter defined) for such item of Equipment within thirty (30) days after the occurrence of any such Casualty. As used herein, the term "Casualty Value" shall mean an amount, which we calculate (without regard to insurance) to give us all of the benefits of our ownership of the Equipment and all other amounts payable hereunder, including but not limited to Tax Benefits (as defined in Section 18 hereof), the payment of Rent, the estimated residual value of the Equipment and any and all other sums payable hereunder. Upon such payment this Lease will terminate with respect to such Equipment and you will be entitled to such Equipment AS-IS-WHERE-IS without warranty, express or implied, with respect to any matter whatsoever and will be responsible for the sale or other disposition of such Equipment.

8. **INSURANCE.** You will provide and maintain for the entire term of this Lease, at your sole expense (a) all risk property insurance against the loss, theft or destruction of, or damage to, the Equipment for one-

hundred and five percent (105%) of its full replacement value, naming us as a loss payee and additional insured, and (b) public liability and third party property insurance, naming us as an additional insured. You will give us certificates or other evidence of such insurance in form and substance satisfactory to us in our sole and absolute discretion when requested. Such insurance will be in a form, amount and with companies acceptable to us, and will provide that we will be given 30 days advance notice of any cancellation or material change of such insurance. It shall be an immediate Default under Section 11 of this Lease if you fail at any time to maintain insurance in accordance with the requirements of this Section 8, and we will have the right, but not the obligation, to have such insurance protecting us placed at your expense; and if so placed, you will pay us on demand all of our costs of obtaining such insurance and any customary charges or fees of ours or our designee associated with such insurance. No such action on our part will constitute a waiver of your default under Section 11 hereof. You further authorize us and irrevocably appoint us as your attorney-in-fact to execute, endorse or otherwise sign any instrument, document, statement, communication or record desirable to preserve our interest with in this Lease, including without limitation, our interest in any insurance or insurance proceeds. This power, being coupled with an interest, will be irrevocable for the term of this Lease.

9.   **TITLE, RECORDING.**   Unless your are granted a $1.00 purchase option under the applicable Schedule, this transaction will be a true lease and we are the owner of and will hold title to the Equipment. If you are granted a $1.00 purchase option or if this transaction is deemed to be a lease intended for security for any reason, you grant us a first priority security interest in the Equipment (including any replacements, substitutions, additions, attachments and proceeds securing, in addition to the debt set forth in this Lease, any other debt owed by you to us at any time). You will deliver to us signed financing statements or other documents we request to protect our interest in the Equipment. YOU AGREE THAT WE ARE AUTHORIZED, AT OUR OPTION, (1) to file, execute, deliver, register, communicate and record ("File") counterparts or photocopies of leases marked "non-negotiable for Filing purposes only" in lieu of financing statements, (2) to File financing statement(s) or amendment(s) thereto without your signature with respect to any of the Equipment, or (3) if a signature is required by law, then you acknowledge and agree that we may, on your behalf as agent, sign any financing statement(s) or amendment(s) thereto relating to the Equipment, and file same in the appropriate recording office(s). You further agree to reimburse us for the expense of any such filing(s). You further agree that we may employ or contract for any corporation, partnership, limited liability company or other business entity to provide services in connection with the Master Lease and any Schedule (a "Service Provider") and hereby authorize any such Service Provider to take any of the aforementioned actions on our behalf. You further agree that you will keep the Equipment free of all claims, charges, liens, security interests and encumbrances of any kind whatsoever.

10.   **REPRESENTATIONS AND WARRANTIES OF LESSEE.**   You warrant and represent to us (all such representations and warranties being continuing) that: (a) you are a corporation, partnership, limited liability company or limited liability partnership, as applicable, and are duly organized, existing and in good standing under the laws of the state of your organization or incorporation, as the case may be, and are duly qualified and authorized to transact business in, and are in good standing under the laws of, each other state in which the Equipment is to be located, (b) this Master Lease, the Schedules and all related instruments and documents, when executed by you and delivered to us, will constitute valid and legally binding obligations of yours, enforceable against you in accordance with the applicable terms, (c) your balance sheet, income statements, and other financial statements or information which have been delivered to us, fairly and completely state your financial condition; there has been no material adverse change in your financial condition as reflected in the statements since the date delivered to us; and the statements do not fail to disclose any facts which might materially adversely affect your financial condition, (d) the Equipment will be used SOLELY FOR BUSINESS OR COMMERCIAL PURPOSES, (e) you will not consolidate or merge into any other business entity or convey, transfer or lease substantially all your assets to any third party without our prior written consent, (f) you have not pledged, granted a security interest in, or otherwise encumbered the Equipment to any other person or entity, nor has this Equipment become subject to or attached to any prior security interest or encumbrance between you or any other person or entity, and (g) the name of listed on the first page of the Master Lease is your correct legal name and you will not change your legal name, location or organizational structure without our prior written consent.

11.  **DEFAULT.** Each of the following is a "Default" under this Lease: (a) you fail to pay any Rent or to make any other payment within 10 days of its due date, (b) you fail to maintain and comply with your insurance obligations set forth in Section 8 above, to return any item to us as and when required under the applicable Schedule or to keep all equipment free of liens as required by Section 9, (c) your attempt to assign, sell, transfer or sublease the Equipment or you interest in this lease in violation of Section 14 hereof, (d) you do not perform any of your other obligations under this Lease or in any other present or future agreement with us or with any of our affiliates and this failure continues for 10 days after we have notified you of it, (f) you become insolvent, you dissolve or are dissolved, or you assign your assets for the benefit of your creditors, or you enter (voluntarily or involuntarily) any bankruptcy or reorganization proceeding,  (e) any guarantor of this Lease dies, does not perform its obligations under the guaranty, or becomes subject to one of the events listed in clause (f), (g) you (or any guarantors) provide or cause any false or misleading signature or representation to be provided to us, (h) a garnishment, judgment, tax levy, attachment or lien is entered or served against you or any guarantor, (i) you fail to provide us evidence of satisfactory financial condition as set forth in Section 16, (j) you have a majority of your outstanding voting securities sold, conveyed, or transferred to any person or entity other than any person or entity that has the majority ownership as of the date of the execution of this Lease, (k) we reasonably deem ourselves to be insecure in our expectation that you will fully perform all of your obligations under this Lease; (l) there occurs, in our sole and absolute opinion, an adverse change in your financial condition or the financial condition of any guarantor; (m) you change your legal name, location or organizational structure without our prior written consent; or (n) you authenticate, communicate, file, or record or attempt to authenticate, communicate, file or record, a termination statement under Article 9 of the UCC, as currently enacted or as subsequently revised or re-enacted, without our prior written consent.

12.  **REMEDIES.** If a Default occurs, we may do one or more of the following: (a) we may cancel or terminate this Master Lease, any and all Schedules and any or all other agreements that we have entered into with you; (b) with respect to each Lease terminated or cancelled, we may require you to immediately pay us, as compensation for loss of our bargain and not as a penalty, an amount, which we calculate (without regard to insurance) to give us all of the benefits of our ownership of the Equipment and all other amounts payable hereunder, including but not limited to Tax Benefits (as defined in Section 18 hereof), the payment of Rent, the estimated residual value of the Equipment and any and all other sums payable hereunder; (c) we may require you to deliver the Equipment to us as set forth in Section 5; (d) we or our agent may peacefully repossess the Equipment without court order or, at our option, rather than take possession of the Equipment render any or all of the Equipment unusable without removing it from the premises without court order and you will not make any claims against us for damages or trespass or any other reason; and (e) we may exercise any other right or remedy available at law or in equity. No remedy referred to in this section or Lease is intended to be exclusive, but shall be cumulative and in addition to any other remedy referred to in this section or otherwise available to us by applicable law.  You agree to pay all of our costs of enforcing our rights against you, including reasonable attorneys' fees.  If we take possession of the Equipment we may sell or re-lease or otherwise dispose of it with or without notice, at a public or private sale, and apply the net proceeds (after we have deducted all costs related to the sale or disposition of the Equipment) to the amounts that you owe us.  You agree that if notice of sale is required by law to be given, 10 days notice shall constitute reasonable notice.  You will remain responsible for any amounts that are due after we have applied such net proceeds.

13.  **FINANCE LEASE STATUS.**  You agree that if Article 2A - Leases of the Uniform Commercial Code (the "UCC") applies to this Lease, this Lease will be considered a "finance lease" as that term is defined in Article 2A.  By signing this Lease, you agree that either (a) you have reviewed, approved, and received, a copy of the Supply Contract or (b) that we have informed you of the identity of the Supplier, that you may have rights under the Supply Contract, and that you may contact the Supplier for a description of those rights.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY ARTICLE 2A.

14.  **ASSIGNMENT.**  YOU MAY NOT ASSIGN, SELL, TRANSFER OR SUBLEASE THE EQUIPMENT OR YOUR INTEREST IN THIS LEASE. We may, without notifying you, sell, assign, or transfer this Lease

or our rights in the Equipment. You agree that the new owner will have the same rights and benefits that we have now under this Lease but not our obligations. The rights of the new owner will not be subject to any claim, defense or set-off that you may have against us.

15. **PURCHASE OPTION; AUTOMATIC RENEWAL.** If no Default exists under this Lease, you will have the option at the end of the original or any renewal term to purchase all (but not less than all) of the Equipment at the Purchase Option price shown in Exhibit B to this Lease, plus any applicable taxes. You must give us at least 60 days written notice (the "End of Term Notice") before the end of the original term or the renewal term, whichever is applicable, that you will purchase the Equipment or that you will deliver the Equipment to us. If you do not give us the End of Term Notice or if you do not purchase or deliver the Equipment in accordance with the terms and conditions of this Lease, this Lease will automatically renew for an additional 12 month term and thereafter renew for successive one month terms until you purchase the equipment or deliver the Equipment to us. During such renewal(s), the Rent will remain the same. We may cancel any automatic renewal term by sending you ten (10) days prior written notice. If the Fair Market Value Purchase Option has been selected, we will use our reasonable judgment to determine the Equipment's fair market value. If you do not agree with our determination of the Equipment's fair market value, the fair market value (on a retail basis) will be determined at your expense by an independent appraiser mutually selected by you and us. This appraisal shall be binding upon you and you acknowledge and agree that your election to purchase the Equipment at fair market value shall be irrevocable upon our receipt of the End of Term Notice and is not subject to your approval of the appraised value of the Equipment. Upon payment of the Purchase Option price plus applicable taxes, we shall transfer our interest in the Equipment to you "AS IS, WHERE IS" without any representation or warranty, express or implied, including any warranty of merchantability or fitness for a particular purpose whatsoever and this Lease will terminate.

16. **FINANCIAL STATEMENTS.** You will annually, within one hundred twenty (120) days after the close of your fiscal year, furnish to us your financial statements including a balance sheet as of the close of the year and income and cash flow statements for the year prepared in accordance with generally accepted accounting principals and certified by an independent public accountant. As requested, you will also provide quarterly financial statements within sixty (60) days following the end of the quarter and such other information as we request from time to time. You further agree to cause any guarantor of your obligations hereunder to provide the foregoing information at our request.

17. **INDEMNIFICATION.** You hereby agree to defend, indemnify and hold us (and at our option our employees, agents, directors, partners, and shareholders) harmless from and against (a) all claims, demands, suits and legal proceedings (whether civil, criminal, administrative, investigative or otherwise (including, without limitation, arbitration, bankruptcy and appeal)) ("Actions"); and (b) any and all penalties, losses, liabilities (including but not limited to the liability of you or us for negligence, tort and strict liability), damages, costs, court costs and any and all other expenses (including, without limitation, attorneys' fees, judgments and amounts paid in settlement) incurred incident to, arising out of or in any way connected with any Actions, the Master Lease, any Schedules, any Equipment, or any other instrument, document or agreement executed in connection with or contemplated by any of the foregoing. The term "attorneys' fees" as used in the preceding sentence shall include, without limitation, any and all attorneys' fees incurred by us (whether by our use of in-house counsel or otherwise) incident to, arising out of or in any way connected with our interests in or defense of any Action or our enforcement of our rights and interest with respect to any Equipment or under the Master Lease, any Schedules, or any other instrument, document or agreement executed in connection with or contemplated by any of the foregoing (which shall include, without limitation, attorneys' fees incurred by us to collect sums due, during any work-out, with respect to settlement negotiations, to enforce any of our rights or to defend us and which, in any bankruptcy proceeding, shall include without limitation any attorneys' fees incurred in connection with any motion for relief from the automatic stay and any motion to assume or reject any lease, it being the intention of the parties that any and all attorneys' fees incurred by us in connection with any bankruptcy proceeding shall constitute "actual pecuniary losses" under §365 of the Bankruptcy Code and that you shall be responsible for indemnifying us with respect to such fees). The foregoing Indemnities are continuing indemnities and shall survive expiration, termination or cancellation of this Agreement whether by expiration of time, by operation of law or otherwise.

18. **TAX INDEMNITY.** Unless you are granted a $1.00 purchase option under the Schedule, it is the intent of both parties that the Master Lease and each Schedule constitutes a true lease and that we will be entitled to such deductions and other tax benefits calculated using applicable tax rates as we are provided as of the date of each Schedule by federal, state and local law to an owner or property (the "Tax Benefits"). You shall not take any action inconsistent with our ownership or which affects our right to claim any deduction, including depreciation or cost recovery deductions, attributable to the Equipment. If as a result of a breach by you of any representation, warranty or covenant of contained in this Master Lease, any Schedule, any purchase order relating to any unit of Equipment, or any other document, instrument or other agreement entered into in connection with, or contemplated by any of the foregoing or if as a result of any change in, amendment to, or replacement for the federal Internal Revenue Code of 1986 (the "Code"), or any judicial or administrative interpretation of the Code (whether or not binding on us) (i) we reasonably determine that we are not entitled to claim on our Federal income tax return all or any portion of the Tax Benefits attributable to the Equipment, (ii) any such Tax Benefit attributable to the Equipment claimed on our Federal income tax return is disallowed in whole or in part or is adjusted by the Internal Revenue Service, (any such determination, disallowance or change that results in a net economic loss to us, as determined by reference to principles and calculations used under the determination of Net Economic Return (defined below), shall herein be called a "Tax Loss"), then you will pay us, as an indemnity and as additional rent, such amount or amounts on the next succeeding rental payment date after we send written notice to you of such Tax Loss, or if there be no such date, 30 days following such notice, as shall in our reasonable opinion cause our after-tax economic yields and cash flows, computed on the same assumptions (including tax rates) as we utilized in originally evaluating the applicable Schedules (such economic yields and cash flows being hereinafter called the "Net Economic Return"), to equal the Net Economic Return that we would realized if such Tax Loss had not occurred. The amount payable to us pursuant to this paragraph shall be payable as provided in this paragraph upon our written notice to you accompanied by a written statement describing in reasonable detail such Tax Loss and the computation of the amount so payable, and any remaining rental payments due under the applicable Schedules shall be adjusted so that our Net Economic Return is unaffected by any Tax Loss. All of our rights, privileges and indemnities contained in this Section 18 shall survive the expiration or other termination of this Lease and the rights, privileges and indemnities contained herein are expressly made for the benefit of, and shall be enforceable by, us and our successors and assigns against you.

19. **STATUTE OF LIMITATIONS.** Any action against us for any default by us under this Lease shall be commenced within one (1) year after any such action accrues.

20. **BANKRUPTCY OF LESSEE.** Upon the filing of a bankruptcy petition, or any other insolvency proceeding under any federal, state or local statute, rule or ordinance, by or against you, this Lease shall automatically terminate and we shall be entitled to obtain immediate possession of the Equipment. In the event such automatic termination is not allowed under the United States Bankruptcy Code or any other applicable statute, ordinance, rule or regulation, upon the filing of a bankruptcy petition, or any other insolvency proceeding, by or against you, you, as debtor or debtor in possession, and any trustee who may be appointed agree as follows: (i) to perform promptly each and every obligation under this Lease, until such Lease is either rejected or assumed by the United States Bankruptcy Court or any other court of competent jurisdiction; (ii) to reject or assume this Lease within sixty (60) days of the filing of the petition or insolvency proceeding; (iii) to give us at least thirty (30) days advance written notice of your intent to reject this Lease so that we can make appropriate arrangements to obtain possession of the Equipment from you; and (iv) to pay all attorneys' fees incurred by us in connection with the bankruptcy filing as outlined under Section 17 hereof.

21. **MISCELLANEOUS.** You agree that the terms and conditions contained in this Lease make up the entire agreement between you and us regarding the lease of the Equipment and that there are no conflicting agreements. This Lease is not binding on us until we sign it. Any change in any of the terms and conditions of this Lease must be in writing and signed by us. You agree, however, that we are authorized, without notice to you, to supply missing information or correct obvious errors in the Lease. If we delay or fail to enforce any of our rights under this Lease, we will still be entitled to enforce those rights at a later time. All notices shall be given in writing by the party sending the notice and shall be effective when deposited in the U. S. Mail, addressed to the party receiving the notice at its address shown on the front of this Lease (or to any other address specified by that party in writing) with postage

prepaid. All of our rights and indemnities will survive the termination of this Lease. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of time price differential or interest, as applicable, permitted to be charged or collected by applicable law and any such excess payment will be applied to Rent in inverse order of maturity and any remaining excess will be refunded to you. If you do not perform any of your obligations under this Lease, we have the right, but not the obligation, to take any action or pay any amounts that we believe are necessary to protect our interests. You agree to reimburse us immediately upon our demand for any such amounts that we pay. You agree to pay us a returned check fee equal to the actual bank charges and other costs and expenses incurred by us, but in no event greater that the maximum amount permitted by law. A waiver of a Default or of a provision of this Lease on one occasion shall not be a waiver of a Default or of a provision of this Lease on any other occasion. If any portion of this Lease is invalid or unenforceable it shall be deemed omitted but shall not invalidate or render unenforceable the remaining portions of this Lease. If more than one Lessee has signed this Lease, each of you agree that your liability is joint and several. All representations, warranties and agreements made herein by any of the parties hereto shall survive consummation of the transactions contemplated hereby. Neither Lease nor any term or provision hereof may be changed, modified, waived, discharged or terminated orally or in any manner other than by an instrument in writing, signed by the party against whom the enforcement of such change, modification, waiver, discharge or termination is sought. The provisions of this Lease shall be severable and if any provision shall be invalid, void or unenforceable in whole or in part for any reason, the remaining provisions shall remain in full force and effect. Each party shall perform any further acts and execute and deliver any documents which may be reasonably necessary to carry out the provisions of this Lease. The terms "herein" or "hereunder" or like terms shall be deemed to refer to this Lease as a whole and not to a particular section. Whenever terms such as "include" or "including" are used in this Lease, they shall mean "include" or "including", as the case may be, without limiting the generality of any description or word preceding such term. Whenever terms such as "satisfactory to us" are used or we are granted the contractual right to choose between alternatives or express our opinion, the satisfaction, choices and opinions are to be made in our sole and absolute discretion. The captions or headings in this Lease are made for convenience and general reference only and shall not be construed to describe, define or limit the scope or intent of the provisions of this Lease. As used herein, all masculine pronouns shall include the feminine or neuter, and all singular terms the plural forms thereof, and vice versa. The exhibits annexed hereto are incorporated herein by this reference and made a part hereof as if contained in the body of this Lease. All references to sections hereunder shall be deemed to refer to sections of this Lease, unless otherwise expressly provided, whether or not "hereof", "above", "below" or like words are used. This Lease has been drafted by our counsel as a convenience to the parties only and shall not, by reason of such action, be construed against us or any other party. You acknowledge and agree that you have had full opportunity to review this Lease and have had access to counsel of your choice to the extent you deem necessary in order to interpret the legal effect hereof. You agree that we are not a "merchant" under the UCC with respect to the Equipment. This Lease may be executed in any number of counterparts, which together shall constitute a single fully executed agreement.

**By signing this Lease (i) you acknowledge that you have read and understand the terms and conditions of this Lease, (ii) you warrant that the person signing the Lease has the authority to do so and to grant the power of attorney set forth in section 9 of this Lease, and (iii) you agree that this Lease will be covered by the laws of the state of Georgia and you consent to the jurisdiction of any court located within Georgia. You and we expressly waive any rights to a trial by jury.**

South Alabama Sleep Center, Inc.                    Sign    Synovus Leasing Company
                                                    Here

By: _____                         By: _____
Shakir R. Meghani                                         Vice President
President

EXHIBIT
2

# ■ SYNOVUS LEASING COMPANY

## EXHIBIT B

## SCHEDULE

This Schedule **No. 01**, dated 1/31/05, is pursuant to the Synovus Master Lease Agreement 0001110 (the "Master Lease"), dated 1/31/05, between the undersigned Lessor and Lessee and all of the terms of the Master Lease are hereby incorporated by reference into this Schedule which shall constitute a lease of the Equipment described below.

**LESSOR:**  Synovus Leasing Company    and    **LESSEE:**  South Alabama Sleep Center, Inc.
1124 Broadway                                         548 Westgate Parkway
Columbus, Georgia 31901                              Dothan, AL 36303

1. <u>EQUIPMENT LEASED.</u>  A list of the Equipment leased upon the terms and conditions contained in the Lease is attached hereto as Schedule A.

2. <u>LESSOR'S COST.</u>  Lessor's Cost of the Equipment is **$77,783.50.**

3. <u>LOCATION OF LEASED EQUIPMENT.</u>  The Equipment shall be domiciled at the address of Lessee set forth above or at the following address(es) and shall not be domiciled elsewhere without the prior written consent of Lessor:

   **South Alabama Sleep Center, Inc.**
   **548 Westgate Parkway**
   **Dothan, AL 36303**

4. <u>TERM.</u>  The Interim Term of this Lease begins on the Acceptance Date and ends on the Commencement Date.  Interim rent from the Acceptance Date to the Commencement Date shall be equal to a daily rental payment of one-thirtieth (1/30th) of the Monthly Rental Payment and shall be due and payable as of the Commencement Date.

   The Base Term of this Lease begins on ___2/15/05___, (the **"Commencement Date"**), and continues for  60 months, unless sooner terminated in accordance with the provisions of this Lease.

5. <u>RENT.</u>  During the Base Term, with respect to each item of Equipment, Lessee shall make consecutive installments of Rent as detailed below, payable in advance to Synovus Leasing Company.

   **RENT**                    **$1,427.06\***

   **\*Rental Amount does not include applicable sales/use tax. This amount will be reflected on your invoice.**

6. <u>INSURANCE.</u>   The minimum amount of insurance to be provided by Lessee as required under the terms of the Lease shall be as follows:  a) Personal Injury $1,000,000  b) Property Damage $1,000,000. Lessor reserves its rights to increase the aforementioned minimum amounts.

7. <u>PURCHASE OPTION.</u>  At Lease end, Lessee may exercise the following purchase options:

   (I)    Purchase the equipment for the greater of its then Fair Market Value or 12% of the original Equipment Cost, or

(II)    Renew the lease for an Extension Term of 12 months at an agreed upon rental amount based on 12% of the Total Equipment Cost; thereafter, at the end of such Extension Term, you may

(a)    purchase the Equipment for its then Fair Market Value, or
(b)    renew the Lease of the Equipment for its then Fair Market Rental Value; or
(c)    return the Equipment to us.

8.  DOCUMENTATION FEE.  Lessee agrees to pay to Lessor a documentation fee of **$700.00.**

9.  INTERIM FUNDING.  Prior to the Commencement Date, amounts funded by Lessor to vendors or others shall bear interest at the rate of Prime plus three percent per annum.  If Lessee has not requested disbursement prior to the Commencement Date, Lessor shall have no obligation to advance any amount on behalf of Lessee.  Lessee shall pay the interest to Lessor monthly in arrears beginning the first month following the initial funding or the interest estimated to be accrued during the Interim Term shall be financed over the Base Term of the Lease ("Progress Payment Financing").

10. MISCELLANEOUS.  By signing this document, Lessee acknowledges and agrees that all terms and conditions as agreed to and executed in the original Master Lease Agreement reference herein and under which this Schedule is funded are in full force and effect and binding on Lessee and that Lessee knows of no reason to suspect that any material adverse change in the condition of the Lessee or Guarantors since the signing of the aforesaid Master Lease has occurred.  Lessee also represents and warrants that Lessee's Corporate Resolution permits entering into this Schedule as contemplated by the original document agreed to and executed under the Master Lease Agreement, and that all guarantees (if any) executed for the benefit of the Lessee under the Master Lease Agreement constitute a continuing obligation under this Schedule.

South Alabama Sleep Center, Inc.                          Synovus Leasing Company

By:_____                          By:_____
Shakir R. Meghani                                              Vice President
President

## SCHEDULE A

## LIST OF EQUIPMENT

The following Equipment, together with all of the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(a)  All attachments, accessions, accessories, tools, parts, supplies, increases, and additions to and all replacements of any substitutions for the Equipment or the other property described herein;

(b)  All accounts, contract rights, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease or other disposition of the Equipment or the other property described in this section.

(c)  All proceeds (including insurance proceeds) from the sale, destruction, loss or other disposition of the Equipment or the other property described in this section;

(d)  All records and data relating to the Equipment or the other property described in this section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Lessee's right, title and interest in and to all computer software required to utilize, create, maintain and process any such records or data on electronic media.

| Serial Number | Description | Quantity | Unit Price | Total Price |
|---|---|---|---|---|
| | E-Series EEG/PSG 44 | 1 | | $77,783.50 |

South Alabama Sleep Center, Inc.

By:_____
Shakir R. Meghani
President

**EXHIBIT A**

## ACCEPTANCE CERTIFICATE

In accordance with the terms and conditions of the Synovus Leasing Company Master Lease Agreement No. 0001110, dated as of 1/31/05, and the Schedule of Leased Equipment, Number 01, dated as of 1/31/05, (the "Schedule of Leased Equipment") by and between Synovus Leasing Company ("Lessor") and South Alabama Sleep Center, Inc. ("Lessee") or other agreements between Lessor and Lessee, Lessee hereby certifies, represents and agrees that: (a) the Equipment referred to in the Schedule of Leased Equipment has been delivered, inspected, installed and is unconditionally and irrevocably accepted by you as satisfactory for all purposes; and (b) Synovus Leasing Company is authorized to purchase the Equipment and begin billing you under the Lease.

The Equipment is accepted on  2/7/05 .
                              Date                    Date

South Alabama Sleep Center, Inc.

By: _____     Sign Here
Shakir R. Meghani
President

**EXHIBIT 3**

## SYNOVUS LEASING COMPANY

# EXHIBIT B

# SCHEDULE

This Schedule **No. 02**, dated 4/13/05, is pursuant to the Synovus Master Lease Agreement 0001110 (the "Master Lease"), dated 1/31/05, between the undersigned Lessor and Lessee and all of the terms of the Master Lease are hereby incorporated by reference into this Schedule which shall constitute a lease of the Equipment described below.

**LESSOR:**    Synovus Leasing Company    and    **LESSEE:**    South Alabama Sleep Center, Inc.
    1124 Broadway    548 Westgate Parkway
    Columbus, Georgia 31901    Dothan, AL 36303

1. <u>EQUIPMENT LEASED</u>. A list of the Equipment leased upon the terms and conditions contained in the Lease is attached hereto as Schedule A.

2. <u>LESSOR'S COST</u>. Lessor's Cost of the Equipment is **$100,547.57.**

3. <u>LOCATION OF LEASED EQUIPMENT</u>. The Equipment shall be domiciled at the address of Lessee set forth above or at the following address(es) and shall not be domiciled elsewhere without the prior written consent of Lessor:

   **South Alabama Sleep Center, Inc.**
   **548 Westgate Parkway**
   **Dothan, AL 36303**

4. <u>TERM</u>. The Interim Term of this Lease begins on the Acceptance Date and ends on the Commencement Date. Interim rent from the Acceptance Date to the Commencement Date shall be equal to a daily rental payment of one-thirtieth (1/30th) of the Monthly Rental Payment and shall be due and payable as of the Commencement Date.

   The Base Term of this Lease begins on ___5/5/05___, **(the "Commencement Date"), and** continues for 60 months, unless sooner terminated in accordance with the provisions of this Lease.

5. <u>RENT</u>. During the Base Term, with respect to each item of Equipment, Lessee shall make consecutive installments of Rent as detailed below, payable in advance to Synovus Leasing Company.

**RENT**        **$1,860.28\***

**\*Rental Amount does not include applicable sales/use tax. This amount will be reflected on your invoice.**

6. <u>INSURANCE</u>. The minimum amount of insurance to be provided by Lessee as required under the terms of the Lease shall be as follows: a) Personal Injury $1,000,000 b) Property Damage $1,000,000. Lessor reserves its rights to increase the aforementioned minimum amounts.

7. <u>PURCHASE OPTION</u>. At Lease end, Lessee may exercise the following purchase options:

   (I)    Purchase the equipment for the greater of its then Fair Market Value or 12% of the original Equipment Cost, or

(II)   Renew the lease for an Extension Term of 12 months at an agreed upon rental amount based on 12% of the Total Equipment Cost; thereafter, at the end of such Extension Term, you may

(a)   purchase the Equipment for its then Fair Market Value, or
(b)   renew the Lease of the Equipment for its then Fair Market Rental Value; or
(c)   return the Equipment to us.

8. <u>DOCUMENTATION FEE</u>. Lessee agrees to pay to Lessor a documentation fee of **$200.00**.

9. <u>INTERIM FUNDING</u>. Prior to the Commencement Date, amounts funded by Lessor to vendors or others shall bear interest at the rate of Prime plus three percent per annum. If Lessee has not requested disbursement prior to the Commencement Date, Lessor shall have no obligation to advance any amount on behalf of Lessee. Lessee shall pay the interest to Lessor monthly in arrears beginning the first month following the initial funding or the interest estimated to be accrued during the Interim Term shall be financed over the Base Term of the Lease ("Progress Payment Financing").

10. <u>MISCELLANEOUS</u>. By signing this document, Lessee acknowledges and agrees that all terms and conditions as agreed to and executed in the original Master Lease Agreement reference herein and under which this Schedule is funded are in full force and effect and binding on Lessee and that Lessee knows of no reason to suspect that any material adverse change in the condition of the Lessee or Guarantors since the signing of the aforesaid Master Lease has occurred. Lessee also represents and warrants that Lessee's Corporate Resolution permits entering into this Schedule as contemplated by the original document agreed to and executed under the Master Lease Agreement, and that all guarantees (if any) executed for the benefit of the Lessee under the Master Lease Agreement constitute a continuing obligation under this Schedule.

South Alabama Sleep Center, Inc.

By: _____   [Sign Here]
Shakir R. Meghani
President

Synovus Leasing Company

By: _____
        Vice President

## SCHEDULE A

## LIST OF EQUIPMENT

The following Equipment, together with all of the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(a) All attachments, accessions, accessories, tools, parts, supplies, increases, and additions to and all replacements of any substitutions for the Equipment or the other property described herein;

(b) All accounts, contract rights, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease or other disposition of the Equipment or the other property described in this section.

(c) All proceeds (including insurance proceeds) from the sale, destruction, loss or other disposition of the Equipment or the other property described in this section;

(d) All records and data relating to the Equipment or the other property described in this section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Lessee's right, title and interest in and to all computer software required to utilize, create, maintain and process any such records or data on electronic media.

| Serial Number | Description | Quantity | Unit Price | Total Price |
|---|---|---|---|---|
| | E-Series EEG/PSG 44 including training/installation/freight | 1 | | $100,547.57 |

South Alabama Sleep Center, Inc.

By: _____
Shakir R. Meghani
President

**EXHIBIT A**

## ACCEPTANCE CERTIFICATE

      In accordance with the terms and conditions of the Synovus Leasing Company Master Lease Agreement No. 0001110, dated as of 1/31/05, and the Schedule of Leased Equipment, Number 02, dated as of 4/13/05, (the "Schedule of Leased Equipment") by and between Synovus Leasing Company ("Lessor") and South Alabama Sleep Center, Inc. ("Lessee") or other agreements between Lessor and Lessee, Lessee hereby certifies, represents and agrees that: (a) the Equipment referred to in the Schedule of Leased Equipment has been delivered, inspected, installed and is unconditionally and irrevocably accepted by you as satisfactory for all purposes; and (b) Synovus Leasing Company is authorized to purchase the Equipment and begin billing you under the Lease.

The Equipment is accepted on  _4/1/05_  .
                        'Date                  Date

South Alabama Sleep Center, Inc.

By: _____       Sign Here
Shakir R. Meghani
President

EXHIBIT
4

Jan. 27, 2005  1:00PM                                          NO. 7139

 **COMPUMEDICS**

in27223.fm

**INVOICE**

Compumedics USA Ltd.
7850 Paseo Del Norte
El Paso, TX 79912
USA

Invoice: IN27223   Revision:  1
Invoice Date: 12/28/04   Page:  1
Print Date: 01/27/05

Bill To: CSOU05

Synovus Leasing Company
P.O. Box 2495
Columbus, GA  31902
USA
P.O. 00001

Ship To: CSOU05

Southeast Psychiatric Services
548 Westgate Parkway
Dothan, AL 36303
USA

Sales Order: CO22739
Order Date: 12/28/04
Salesperson(s): EVIT01   SLEEP

Credit Terms: N30
Net 30 Days
Resale:
Remarks: Approved per David Lawson

Ship Date: 12/28/04
Ship-to: CSOU0561
Ship Via: Best Way
BOL:
FOB Point: Shipping Point

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 9008-0010-01 | EA | 4.0 | | 0.0 no | 8,149.11 | 32,596.44 |
| E-Series EEG/PSG 44 Channel System | | | | | | |

| Lot/Serial Numbers Shipped: | Qty | Expire | Reference |
|---|---|---|---|
| 2006 | 1.0 | | |
| 2044 | 1.0 | | |
| 2047 | 1.0 | | |
| 2059 | 1.0 | | |

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 7000-0239-01 | EA | 4.0 | | 0.0 no | 611.01 | 2,444.04 |
| Combo XPOD 3012 & Noni 8000J Probe (MK2) | | | | | | |

**\*\*\* CONTINUED \*\*\***

COPY

Wire Transfer Information:   Compumedics USA, Ltd      JPMorgan Chase Bank
Account 72061190575   ABA 113-000-609   Swift code TCBKUS44
Page 1

Compumedics USA Ltd:   Neuroscan Toll Free: 1-800-614-8890   Compumedics Divisions:

FEB-28-2005  11:41AM  FROM-

T-900   P.008/008   F-574

FEB-28-2005 11:39AM FROM-                                    T-300 P.002 F-574

 **COMPUMEDICS**

Compumedics USA Ltd.
7850 Paseo Del Norte
El Paso, TX 79912
USA

in27223.prn

**I N V O I C E**

Invoice: IN27223     Revision:   1
Invoice Date: 12/28/04     Page:   2
Print Date: 01/27/05

Bill To: CSOU05                    Ship To: CSOU05

Synovus Leasing Company            Southeast Psychiatric Services
P.O. Box 2485                      548 Westgate Parkway
Columbus, GA  31902                Dothan, AL 36303
USA                                USA
P.O. 00001

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 7000-0239-01 | | ***Cont*** | | | | |
| Lot/Serial Numbers Shipped: | | Qty | Expire | Reference | | |
| 124201123 | | 1.0 | | | | |
| 124201132 | | 1.0 | | | | |
| 124201143 | | 1.0 | | | | |
| 124201304 | | 1.0 | | | | |
| 7008-0004-01 | EA | 4.0 | | 0.0 no | 1,062.15 | 4,248.60 |
| E-Series EEG/PSG | | | | | | |
| Sleep Sensor Kit | | | | | | |
| 9107-0002-01 | EA | 2.0 | | 0.0 no | 7,957.00 | 15,914.00 |
| S/W Pack PSG Online | | | | | | |
| Acq & Analy (Siesta, E) | | | | | | |
| Lot/Serial Numbers Shipped: | | Qty | Expire | Reference | | |
| OG0129 | | 1.0 | | | | |
| OG0130 | | 1.0 | | | | |
| 0208-0005-01 | EA | 1.0 | | 0.0 no | 0.00 | 0.00 |
| E-Series EEG/PSG Sys | | | | | | |
| HW Doc Pack - English | | | | | | |
| 0205-0025-01 | EA | 1.0 | | 0.0 no | 0.00 | 0.00 |

*** CONTINUED ***

 COPY

Wire Transfer Information:          Compumedics USA, Ltd      JPMorgan Chase Bank
Account 72061190575          ABA 113-000-609          Swift code TCBKUS44
                                              Page 2
Compumedics USA Ltd:     Neuroscan Toll Free: 1-800-614-9890
7850 Paseo del Norte     Compumedics Toll Free: 1-877-717-3975
El Paso, Texas 79912     Fax 915-845-2965          Compumedics Divisions:

   

FEB-28-2005 11:39AM FROM-

T-900 P.003/008 F-574

 **COMPUMEDICS**



in27223.

| Compumedics USA Ltd.<br>7850 Paseo Del Norte<br>El Paso, TX 79912<br>USA | I N V O I C E |
|---|---|
| | Invoice: IN27223  Revision:  1<br>Invoice Date: 12/28/04   Page:  3<br>Print Date: 01/27/05 |

Bill To: CS0U05

Synovus Leasing Company
P.O. Box 2485
Columbus, GA 31902
USA
P.O. 00001

Ship To: CS0U05

Southeast Psychiatric Services
548 Westgate Parkway
Dothan, AL 36303
USA

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 0205-0025-01<br>Profusion PSG 2<br>Documentation Pack | ***Cont*** | | | | | |
| 9100-1000-01<br>Digital Video Server S/W<br>c/w Winnov Card | EA | 2.0 | | 0.0 no | 1,821.35 | 3,642.70 |
| Lot/Serial Numbers Shipped:<br>A6<br>A7 | | Qty<br>1.0<br>1.0 | Expire | Reference | | |
| 2000-1046-00<br>Winnov PCI Video<br>Capture Card | EA | 2.0 | | 0.0 no | 255.50 | 511.00 |
| 00103208<br>COMPUTER, MINITOWER | ea | 2.0 | | 0.0 no | 2,117.00 | 4,234.00 |
| Lot/Serial Numbers Shipped:<br>B9WK561<br>JB3D961 | | Qty<br>1.0<br>1.0 | Expire | Reference | | |

*** CONTINUED ***



Compumedics USA Ltd.   Neuroscan Toll Free: 1-800-814-8880    Compumedics Divisions:
7850 Paseo del Norte    Compumedics Toll Free: 1-877-717-3975
El Paso, Texas 79912    Fax: 915-845-2985

   

FEB-28-2005  11:40AM  FROM-                                          T-300  P.004/008  F-574

 **COMPUMEDICS**

in27223.prn

Compumedics USA Ltd.                                    I N V O I C E
7850 Paseo Del Norte
El Paso, TX 79912                    Invoice: IN27223    Revision:    1
USA                                  Invoice Date: 12/28/04    Page:    4
                                     Print Date: 01/27/05

        Bill To: CSOU05                      Ship To: CSOU05

        Synovus Leasing Company              Southeast Psychiatric Services
        P.O. Box 2485                        548 Westgate Parkway
        Columbus, GA  31902                  Dothan, AL 36303
        USA                                  USA
        P.O. 00001

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 00103208 | | ***Cont*** | | | | |
| 00103203 | EA | 1.0 | 0.0 | no | 93.42 | 93.42 |
| Roxio Media Creator | | | | | | |
| 7500-0014-00 | EA | 2.0 | 0.0 | no | 255.50 | 511.00 |
| UPS | | | | | | |
| 500VA Upsonic LS-MT600 | | | | | | |

        Lot/Serial Numbers Shipped:    Qty    Expire    Reference
          PB0421338236                 1.0
          PB0441333046                 1.0

| 7600-0027-01 | EA | 4.0 | 0.0 | no | 912.50 | 3,650.00 |
| Monitor 19 inch LCD | | | | | | |
| Display | | | | | | |

        Lot/Serial Numbers Shipped:    Qty    Expire    Reference
          71618-4AT-ABCN               1.0
          71618-4AT-ABCU               1.0
          71618-4AT-AC7W               1.0
          71618-4AT-AC7X               1.0

------------------------------------------------------------------------

                        *** CONTINUED ***

                                                COPY

          Wire Transfer Information:    Compumedics USA, Ltd    JPMorgan Chase Bank
          Account 720611190575          ABA 113-000-609        Swift code TCBKUS44
                                        Page 4

Compumedics USA Ltd:    Neuroscan Toll Free: 1-800-514-8880        Compumedics Divisions:
7850 Paseo del Norte     Compumedics Toll Free: 1-877-717-3875
El Paso, Texas 79912     Fax: 915-845-2965

   

 COMPUMEDICS

in27223.prn

I N V O I C E

Compumedics USA Ltd.
7850 Paseo Del Norte
El Paso, TX 79912
USA

Invoice: IN27223    Revision: 1
Invoice Date: 12/28/04    Page: 5
Print Date: 01/27/05

Bill To: CSOU05

Synovus Leasing Company
P.O. Box 2485
Columbus, GA  31902
USA
P.O. 00001

Ship To: CSOU05

Southeast Psychiatric Services
548 Westgate Parkway
Dothan, AL 36303
USA

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 7600-0027-01 | | ***Cont*** | | | | |
| 7700-0005-00 | EA | 1.0 | 0.0 | no | 288.35 | 288.35 |
| Printer HP Deskjet 6127 | | | | | | |

Lot/Serial Numbers Shipped:    Qty    Expire    Reference
  SMY49A3B068                   1.0

| 00101599 | EA | 1.0 | 0.0 | no | 25.55 | 25.55 |
| Cable 15' USB | | | | | | |

| 2000-1018-00 | EA | 2.0 | 0.0 | no | 98.55 | 197.10 |
| Board 3COM PCI LAN10/100 | | | | | | |
| Mhz UTP 3C905B-Tx | | | | | | |

| 7500-0005-00 | EA | 1.0 | 1.0 | no | 73.00 | 73.00 |
| Hub LAN 8 Port 10 BaseT | | | | | | |
| 10/100 D-LINK Ethernet | | | | | | |

Lot/Serial Numbers Shipped:    Qty    Expire    Reference
  DS1813CDB688168               1.0

| 8300-0089-00 | EA | 4.0 | 0.0 | no | 489.10 | 1,956.40 |
| Infrared Illuminator - | | | | | | |
| Rainbow IRL594A | | | | | | |

*** CONTINUED ***

COPY

Wire Transfer Information:    Compumedics USA, Ltd    JPMorgan Chase Bank
Account 72061190575    ABA 113-000-609    Swift code TOBKUS44
Page 5

Compumedics USA Ltd.    Neuroscan Toll Free: 1-800-814-8890    Compumedics Divisions:
7850 Paseo del Norte    Compumedics Toll Free: 1-877-717-3975
El Paso, Texas 79912    Fax: 915-845-2985

   

# COMPUMEDICS

in27223.prn

Compumedics USA Ltd.
7850 Paseo Del Norte
El Paso, TX 79912
USA

**I N V O I C E**

Invoice: IN27223    Revision: 1
Invoice Date: 12/28/04    Page: 6
Print Date: 01/27/05

Bill To: CSOU05

Synovus Leasing Company
P.O. Box 2485
Columbus, GA   31902
USA
P.O. 00001

Ship To: CSOU05

Southeast Psychiatric Services
549 Westgate Parkway
Dothan, AL 36303
USA

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 8300-0089-00 | | ***Cont*** | | | | |
| 8300-0093-00 | EA | 4.0 | 0.0 | no | 310.25 | 1,241.00 |
| Video Camera B/W VAC | | | | | | |
| Panasonic WV-BP-334 | | | | | | |

Lot/Serial Numbers Shipped:

| | Qty | Expire | Reference |
|---|---|---|---|
| DHV20841 | 1.0 | | |
| DHV20846 | 1.0 | | |
| DHV20869 | 1.0 | | |
| DHV20903 | 1.0 | | |

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 8300-0094-00 | EA | 4.0 | 0.0 | no | 69.35 | 277.40 |
| Video Camera Lens 3.0- | | | | | | |
| 8mm Rainbow L308VCS | | | | | | |
| 8300-0095-00 | EA | 4.0 | 0.0 | no | 36.50 | 146.00 |
| Videoclarm Camera Mount | | | | | | |
| CMPMB | | | | | | |
| 00101522 | EA | 4.0 | 0.0 | no | 427.05 | 1,708.20 |
| Lounge Audio Monitoring | | | | | | |
| Kit | | | | | | |

\*\*\* CONTINUED \*\*\*

Wire Transfer Information:   Compumedics USA, Ltd    JPMorgan Chase Bank
Account 72061190575    ABA 113-000-609     Swift code TCBKUS44
Page 6

Compumedics USA Ltd:    Neuroscan Toll Free: 1-800-814-8890    Compumedics Divisions:
7850 Paseo del Norte    Compumedics Toll Free: 1-877-717-3975
El Paso, Texas 79912    Fax: 915-845-2965

   

Wire Transfer Information:   Compumedics USA, Ltd    JPMorgan Chase Bank
Account 72061190575    ABA 113-000-609     Swift code TCBKUS44
Page 7

Compumedics USA Ltd:    Neuroscan Toll Free: 1-800-814-8890    Compumedics Divisions:
7850 Paseo del Norte    Compumedics Toll Free: 1-877-717-3975
El Paso, Texas 79912    Fax: 915-845-2965

   

FEB-28-2005 11:40AM FROM-                                    T-800 P.007/009 F-574

 **COMPUMEDICS**

in27223

I N V O I C E

Compumedics USA Ltd.
7850 Paseo Del Norte
El Paso, TX 79912
USA

Invoice: IN27223    Revision:    1
Invoice Date: 12/28/04    Page:    8
Print Date: 01/27/05

Bill To: CSOU05                    Ship To: CSOU05

Synovus Leasing Company            Southeast Psychiatric Services
P.O. Box 2485                      548 Westgate Parkway
Columbus, GA  31902                Dothan, AL 36303
USA                                USA
P.O. 00001

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 7500-0005-00 | | ***Cont*** | | | | |
| 8300-0090-00 | EA | 4.0 | | 0.0 no | 10.95 | 43.80 |
| Power Supply, Rainbow, BTX 24VAC 40VA | | | | | | |
| Memo Item | 01/27/05 | | | 1.0 | 0.00 | 0.00 |
| On-Site Installation | | | | | | |
| 9008-9010-00 | 01/27/05 | | | 1.0 EA | 2,555.00 | 2,555.00 |
| Two Day Training Session | | | | | | |
| Memo Item | 01/27/05 | | | 1.0 | 1,168.00 | 1,168.00 |
| Additional S/W Maintainenance Agreement (1yr) | | | | | | |

Non-Taxable: 77,671.00        Currency: USD    Line Total:    77,671.00
    Taxable: 0.00                    0.00%    Discount:         0.00
    Tax Date: 12/28/04                          Service    10 :    0.00
                                                Freight30   20 :   112.50
                                                Special    30 :     0.00
    1    0.000%    2    0.000%    3    0.000%    Total Tax:    0.00
         0.00            0.00            0.00    Total:    77,783.50

Wire Transfer Information:    Compumedics USA, Ltd    JPMorgan Chase Bank
Account 72061190575    ABA 113-000-609    Swift code TCBKUS44

Compumedics USA Ltd·    Neuroscan Toll Free: 1-800-614-8890    Compumedics Division)
7850 Paseo del Norte    Compumedics Toll Free: 1-877-717-3975
El Paso Texas 79912    Fax 915-845-9985



COPY



EXHIBIT

5



# COMPUMEDICS

Compumedics USA Ltd.
7850 Paseo Del Norte
El Paso, TX 79912
USA

in28272.prn

I N V O I C E

Invoice: IN28272    Revision: 1
Invoice Date: 02/28/05    Page: 1
Print Date: 03/29/05

Bill To: 10004315

SYNCVUS LEASING COMPANY
P.O. BOX 2485
548 Westgate Parkway
Columbus, GA   31902
USA
P.O. 00002

Ship To: 10004315

South Alabama Sleep Ctr.
548 Westgate Parkway
Dothan, AL 36303
USA

Sales Order: CO23234
Order Date: 02/18/05
Salesperson(s): BVIT01    SCIENCE

Credit Terms: N30
            Net 30 Days
      Resale:
      Remarks:

Ship Date: 02/28/05

Ship-to: CSOU05S2
Ship Via: Best Way
      BOL:
FOB Point: Shipping Point

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 9008-0010-01 | EA | 5.0 | 0.0 | no | 7,272.92 | 36,364.60 |
| ESeries EEG/PSG 44 | | | | | | |
| Channel System | | | | | | |

Lot/Serial Numbers Shipped:    Qty    Expire    Reference
      1960                     1.0
      1970                     1.0
      1974                     1.0
      1981                     1.0
      1982                     1.0

------------------------------------------------------------

\*\*\* CONTINUED \*\*\*

Wire Transfer Information:
    Account 72061210183

Compumedics USA, Ltd
    ABA 113-000-609

JPMorgan Chase Bank
Swift codes TCBKUS44

Compumedics USA Ltd:    Neuroscan Toll Free: 1-800-814-8590
7850 Paseo del Norte    Compumedics Toll Free: 1-877-717-3975
El Paso, Texas 79912    Fax: 915-845-2385
                        Web: www.neuro.com

Page    Compumedics Divisions:







# COMPUMEDICS

in28272.prn

Compumedics USA Ltd.
7850 Paseo Del Norte
El Paso, TX 79912
USA

I N V O I C E

Invoice: IN28272    Revision:    1
Invoice Date: 02/28/05    Page:    2
Print Date: 03/29/05

Bill To: 10004315

SYNOVUS LEASING COMPANY
P.O. BOX 2485
548 Westgate Parkway
Columbus, GA  31902
USA
P.O. 00002

Ship To: 10004315

South Alabama Sleep Ctr.
548 Westgate Parkway
Dothan, AL 36303
USA

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 9008-0010-01 | | ***Cont*** | | | | |
| 7000-0239-01 | ea | 5.0 | 0.0 | no | 535.68 | 2,678.40 |
| Combo XPOD 3012 & | | | | | | |
| Noni 8000J Probe (MK2) | | | | | | |

Lot/Serial Numbers Shipped:    Qty    Expire    Reference
    124201008                   1.0
    124201032                   1.0
    124201045                   1.0
    124201065                   1.0
    124201070                   1.0

| | | | | | | |
|---|---|---|---|---|---|---|
| 7008-0004-01 | EA | 4.0 | 0.0 | no | 931.20 | 3,724.80 |
| ESeries EEG/PSG | | | | | | |
| Sleep Sensor Kit | | | | | | |

------------------------------------------------------------------------

\*\*\*    CONTINUED    \*\*\*

Wire Transfer Information:       Compumedics USA, Ltd       JPMorgan Chase Bank
    Account 72061210183              ABA 113-000-609          Swift codes TCBKUS44

Compumedics USA Ltd:  Neuroscan Toll Free: 1-800-814-8890     Page    Compumedics Divisions:
7850 Paseo del Norte      Compumedics Toll Free: 1-877-717-3975
El Paso, Texas 79912      Fax: 915-845-2986
                          Web: www.neuro.com









# COMPUMEDICS

in28272.prn

Compumedics USA Ltd.
7850 Paseo Del Norte
El Paso, TX 79912
USA

                                        I N V O I C E

                         Invoice: IN28272   Revision:    1
                    Invoice Date: 02/28/05       Page:    3
                    Print Date: 03/29/05


Bill To: 10004315                 Ship To: 10004315

SYNOVUS LEASING COMPANY           South Alabama Sleep Ctr.
P.O. BOX 2485                     548 Westgate Parkway
548 Westgate Parkway              Dothan, AL 36303
Columbus, GA  31902              USA
USA
P.O. 00002


| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 7008-0004-01 | ***Cont*** | | | | | |
| 7008-0002-01 | EA | 1.0 | 0.0 | no | 371.20 | 371.20 |
| ESeries EEG 32 Channel Electrode Kit | | | | | | |

Lot/Serial Numbers Shipped:        Qty    Expire     Reference
  CO23234                          1.0

| 9008-0009-00 | EA | 1.0 | 0.0 | no | 1,024.00 | 1,024.00 |
| ESeries Photic Strobe Kit | | | | | | |

Lot/Serial Numbers Shipped:        Qty    Expire     Reference
  89935                            1.0

| 9107-0002-01 | EA | 3.0 | 0.0 | no | 6,976.00 | 20,928.00 |
| S/W Pack PSG Online Acq & Analy (Siesta E) | | | | | | |

Lot/Serial Numbers Shipped:        Qty    Expire     Reference
  OI0004                           1.0
  OI0010                           1.0
  OI0017                           1.0


--------------------------------------------------------------------
                    ***   CONTINUED   ***

Wire Transfer Information:      Compumedics USA, Ltd      JPMorgan Chase Bank
    Account 72061210183              ABA 113-000-609          Swift codes TCBKUS44

Compumedics USA Ltd.   Neuroscan Toll Free: 1-800-814-8890   Compumedics Divisions:
7850 Paseo del Norte   Compumedics Toll Free: 1-877-717-3975
El Paso, Texas 79912   Fax: 915-845-2985
                       Web: www.neuro.com


Sleep

Neuroscan

Neuroscience

Neuromedical

DWR

 COMPUMEDICS

```
Compumedics USA Ltd.                in28272.prn
7850 Paseo Del Norte                                    I N V O I C E
El Paso, TX 79912
USA                             Invoice: IN28272   Revision:   1
                           Invoice Date: 02/28/05      Page:    4
                             Print Date: 03/29/05


        Bill To: 10004315              Ship To: 10004315

        SYNOVUS LEASING COMPANY        South Alabama Sleep Ctr.
        P.O. BOX 2485                  548 Westgate Parkway
        548 Westgate Parkway           Dothan, AL 36303
        Columbus, GA  31902            USA
        USA
        P.O. 00002
```

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 9107-0002-01 | | ***Cont*** | | | | |
| 9108-0016-01 | EA | 1.0 | | 0.0 no | 6,976.00 | 6,976.00 |
| S/W Pk Profusion EEG | | | | | | |
| V3 6 Online Acq/Replay | | | | | | |

```
    Lot/Serial Numbers Shipped:     Qty    Expire    Reference
     OK0093                         1.0
```

| 0208-0001-01 | EA | 1.0 | | 0.0 no | 0.00 | 0.00 |
| EEG User Guide | | | | | | |

```
    Lot/Serial Numbers Shipped:     Qty    Expire    Reference
     N/S                            1.0
```

| 9100-1000-01 | EA | 5.0 | | 0.0 no | 1,596.80 | 7,984.00 |
| Digital Video Server S/W | | | | | | |
| c/w Winnov Card | | | | | | |

```
    Lot/Serial Numbers Shipped:     Qty    Expire    Reference
     A-15                           1.0
     A-16                           1.0
     A-17                           1.0
     A-18                           1.0
```

```
    --------------------------------------------------------------------

                    ***   CONTINUED   ***
```

             Wire Transfer Information:        Compumedics USA, Ltd           JPMorgan Chase Bank
                Account 72061210183               ABA 113-000-609            Swift codes TCBKUS44

Compumedics USA Ltd:  Neuroscan Toll Free: 1-800-814-8890     Page  Compumedics Divisions:
7850 Paseo del Norte    Compumedics Toll Free: 1-877-717-3975
El Paso, Texas 79912    Fax: 915-845-2985
                        Web: www.neuro.com

  

COMPUMEDICS

in28272.prn

Compumedics USA Ltd.
7850 Paseo Del Norte
El Paso, TX 79912
USA

**I N V O I C E**

Invoice: IN28272    Revision:    1
Invoice Date: 02/28/05    Page:    5
Print Date: 03/29/05

Bill To: 10004315

SYNOVUS LEASING COMPANY
P.O. BOX 2485
548 Westgate Parkway
Columbus, GA  31902
USA
P.O.  00002

Ship To: 10004315

South Alabama Sleep Ctr.
548 Westgate Parkway
Dothan, AL 36303
USA

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 9100-1000-01 | | ***Cont*** | | | | |
| A-19 | | | 1.0 | | | |
| 2000-1046-00<br>Winnov PCI Video<br>Capture Card | EA | 3.0 | 2.0 | no | 224.00 | 672.00 |
| 00103208<br>COMPUTER MINITOWER | ea | 3.0 | 0.0 | no | 1,856.00 | 5,568.00 |

Lot/Serial Numbers Shipped:    Qty    Expire    Reference
  81RYV61    1.0
  H0RYV61    1.0
  J1RYV61    1.0

| 7500-0014-00<br>UPS<br>600VA Upsonic LS-MT600 | EA | 2.0 | 0.0 | no | 224.00 | 448.00 |

Lot/Serial Numbers Shipped:    Qty    Expire    Reference
  SPB0439132440    1.0
  SPB0439132448    1.0

---

**\*\*\*  CONTINUED  \*\*\***

Wire Transfer Information:
Account 72051210183

Compumedics USA, Ltd
ABA 113-000-609

JPMorgan Chase Bank
Swift codes TCBKUS44

Compumedics USA Ltd:  Neuroscan Toll Free: 1-800-614-8890
7850 Paseo del Norte    Compumedics Toll Free: 1-877-717-3975
El Paso, Texas 79912    Fax: 915-345-2985
Web: www.neuro.com

Page  Compumedics Divisions

Sleep NeuroScan NeuroScience NeuroMedical DWL

COMPUMEDICS

Compumedics USA Ltd.
7850 Paseo Del Norte
El Paso, TX 79912
USA

in28272.prn

I N V O I C E

Invoice: IN28272    Revision:    1
Invoice Date: 02/28/05         Page:    6
Print Date: 03/29/05

Bill To: 10004315

SYNOVUS LEASING COMPANY
P.O. BOX 2485
548 Westgate Parkway
Columbus, GA  31902
USA
P.O.  00002

Ship To: 10004315

South Alabama Sleep Ctr.
548 Westgate Parkway
Dothan, AL 36303
USA

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 7500-0014-00 | | ***Cont*** | | | | |
| 7500-0015-00 | EA | 1.0 | 0.0 | no | 480.00 | 480.00 |
| PowerVar ISO Transformer UPS | | | | | | |
| Lot/Serial Numbers Shipped: | | Qty | Expire | Reference | | |
| 5405003-0440058 | | 1.0 | | | | |
| 7600-0027-01 | EA | 5.0 | 0.0 | no | 800.00 | 4,000.00 |
| Monitor 19 inch LCD Display | | | | | | |
| Lot/Serial Numbers Shipped: | | Qty | Expire | Reference | | |
| 71618-4CH-AANK | | 1.0 | | | | |
| 71618-4CH-AAZH | | 1.0 | | | | |
| 71618-4CH-AD3M | | 1.0 | | | | |
| 716184CHACRG | | 1.0 | | | | |
| 716184CHAHAS | | 1.0 | | | | |
| 7700-0005-00 | EA | 1.0 | 1.0 | no | 252.80 | 252.80 |
| Printer HP Deskjet 6127 | | | | | | |
| Lot/Serial Numbers Shipped: | | Qty | Expire | Reference | | |
| SMY48S3B0RV | | 1.0 | | | | |

*** CONTINUED ***

Wire Transfer Information:
Account 72061210183

Compumedics USA, Ltd
ABA 113-000-609

JPMorgan Chase Bank
Swift codes TCBKUS44

Compumedics USA Ltd; Neuroscan Toll Free: 1-800-814-8890
7850 Paseo del Norte    Compumedics Toll Free: 1-877-717-3975
El Paso, Texas 79912    Fax: 915-845-2965
                        Web: www.neuro.com

Page    Compumedics Divisions:

    

COMPUMEDICS

```
Compumedics USA Ltd.                in28272.prn
7850 Paseo Del Norte                                      I N V O I C E
El Paso, TX 79912
USA                                  Invoice: IN28272   Revision:    1
                                Invoice Date: 02/28/05       Page:    7
                                  Print Date: 03/29/05
```

```
        Bill To: 10004315              Ship To: 10004315

    SYNOVUS LEASING COMPANY            South Alabama Sleep Ctr.
    P.O. BOX 2485                      548 Westgate Parkway
    548 Westgate Parkway               Dothan, AL 36303
    Columbus, GA  31902                USA
    USA
    P.O. 00002
```

```
Item Number          UM    Shipped Backorder Tax        Price        Net Price
------------------   --   --------- --------- ---   --------------   -----------
7700-0005-00              ***Cont***

2000-1018-00         EA      3.0        0.0 no          86.40           259.20
  Board 3COM PCI LAN10/100
  Mhz UTP 3C905B-Tx

7500-0005-00         EA      1.0        0.0 no          64.00            64.00
  Hub LAN 8 Port 10 BaseT
  10/100 D-LINK Ethernet
  Lot/Serial Numbers Shipped:    Qty     Expire    Reference
    DS1814BDB718303              1.0

8300-0089-00         EA      5.0        0.0 no         428.80          2,144.00
  Infrared Illuminator
  Rainbow IRL594A

8300-0093-00         EA      2.0        3.0 no         272.00           544.00
  Video Camera B/W VAC
  Panasonic WV-BP-334
  Lot/Serial Numbers Shipped:    Qty     Expire    Reference
    DIV26456                    1.0
    DIV26517                    1.0
```

```
--------------------------------------------------------------------------
                        ***  CONTINUED  ***
```

```
        Wire Transfer Information:    Compumedics USA, Ltd       JPMorgan Chase Bank
           Account 72061210183          ABA 113-000-609          Swift codes TCBKUS44
```

Compumedics USA Ltd.  Neuroscan Toll Free: 1-800-814-8890    Page 5 Compumedics Divisions:
7850 Paseo del Norte   Compumedics Toll Free: 1-877-717-3975
El Paso, Texas 79912   Fax: 915-845-2985
                       Web: www.neuro.com

    

COMPUMEDICS

in28272.prn

Compumedics USA Ltd.
7850 Paseo Del Norte
El Paso, TX 79912
USA

I N V O I C E

Invoice: IN28272   Revision:   1
Invoice Date: 02/28/05   Page:   8
Print Date: 03/29/05

Bill To: 10004315

SYNOVUS LEASING COMPANY
P.O. BOX 2485
548 Westgate Parkway
Columbus, GA   31902
USA
P.O. 00002

Ship To: 10004315

South Alabama Sleep Ctr.
548 Westgate Parkway
Dothan, AL 36303
USA

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 8300-0093-00 | | ***Cont*** | | | | |
| 8300-0094-00 | EA | 5.0 | 0.0 | no | 60.80 | 304.00 |
| Video Camera Lens 3 0 | | | | | | |
| 8mm Rainbow L308VCS | | | | | | |
| 8300-0095-00 | EA | 4.0 | 1.0 | no | 32.00 | 128.00 |
| Videolarm Camera Mount | | | | | | |
| CWPM8 | | | | | | |
| 8300-0090-00 | EA | 4.0 | 1.0 | no | 9.60 | 38.40 |
| Power Supply Rainbow | | | | | | |
| BTX 24VAC 40VA | | | | | | |
| 00101522 | EA | 3.0 | 0.0 | no | 374.40 | 1,123.20 |
| Louroe Audio Monitoring | | | | | | |
| Kit | | | | | | |
| 3100-0010-00 | EA | 5.0 | 0.0 | no | 0.00 | 0.00 |
| Lead IEC Power (USA) | | | | | | |
| standard | | | | | | |

*** CONTINUED ***

Wire Transfer Information:
Account 72061210183

Compumedics USA, Ltd
ABA 113-000-609

JPMorgan Chase Bank
Swift codes TCBKUS44

Page   Compumedics Divisions:

Compumedics USA Ltd:   Neuroscan Toll Free: 1-800-814-8890
7850 Paseo del Norte   Compumedics Toll Free: 1-877-717-3975
El Paso, Texas 79912   Fax: 915-845-2985
                       Web: www.neuro.com

   

COMPUMEDICS

in28272.prn

```
Compumedics USA Ltd.                                            I N V O I C E
7850 Paseo Del Norte
El Paso, TX 79912
USA                                    Invoice:  IN28272   Revision:    1
                                  Invoice Date: 03/09/05        Page:    9
                                   Print Date: 03/29/05
```

```
        Bill To: 10004315                Ship To: 10004315

    SYNOVUS LEASING COMPANY              South Alabama Sleep Ctr.
    P.O. BOX 2485                        548 Westgate Parkway
    548 Westgate Parkway                 Dothan, AL 36303
    Columbus, GA  31902                  USA
    USA
    P.O. 00002
```

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 3100-0010-00 | | ***Cont*** | | | | |
| 7500-0045-01 PC Speaker set powered Sound Blaster SBS16 | EA | 3.0 | 0.0 | no | 32.00 | 96.00 |
| 7700-0005-00 Printer HP Deskjet 6127 | EA | 1.0 | 0.0 | no | 252.80 | 252.80 |

```
    Lot/Serial Numbers Shipped:   Qty    Expire    Reference
      SMY4AL4B0BH                  1.0
```

| 8300-0093-00 Video Camera B/W VAC Panasonic WV-BP-334 | EA | 3.0 | 0.0 | no | 272.00 | 816.00 |

```
    Lot/Serial Numbers Shipped:   Qty    Expire    Reference
      DJV23059                     1.0
      DJV23145                     1.0
      DKV23104                     1.0
```

| 8300-0095-00 Videolarm Camera Mount CWPMB | EA | 1.0 | 0.0 | no | 32.00 | 32.00 |

```
-----------------------------------------------------------------------

            ***   CONTINUED   ***
```

Wire Transfer Information:       Compumedics USA, Ltd        JPMorgan Chase Bank
    Account 72061210183               ABA 113-000-609          Swift codes TCBKUS44

Compumedics USA Ltd:   Neuroscan Toll Free: 1-800-914-8890    Page    Compumedics Divisions:
7850 Paseo del Norte   Compumedics Toll Free: 1-877-717-3975
El Paso, Texas 79912   Fax: 915-645-2955
                       Web: www.neuro.com







Compumedics USA Ltd.
7850 Paseo Del Norte
El Paso, TX 79912
USA

in28272.prn

I N V O I C E

Invoice: IN28272   Revision:   1
Invoice Date: 03/09/05        Page:   10
Print Date: 03/29/05

Bill To: 10004315

SYNOVUS LEASING COMPANY
P.O. BOX 2485
548 Westgate Parkway
Columbus, GA  31902
USA
P.O. 00002

Ship To: 10004315

South Alabama Sleep Ctr.
548 Westgate Parkway
Dothan, AL 36303
USA

| Item Number | UM | Shipped | Backorder | Tax | Price | Net Price |
|---|---|---|---|---|---|---|
| 8300-0095-00 | | ***Cont*** | | | | |
| 8300-0090-00<br>Power Supply Rainbow<br>BTX 24VAC 40VA | EA | 1.0 | 0.0 | no | 9.60 | 9.60 |
| Memo Item<br>On-Site Installation | | 1.0 | 0.0 | no | 0.00 | 0.00 |
| Memo Item<br>Two-Day Training | | 1.0 | 0.0 | no | 1,600.00 | 1,600.00 |
| Memo Item<br>Additional S/W | | 1.0 | 0.0 | no | 1,024.00 | 1,024.00 |
| 2000-1046-00<br>Winnov PCI Video | EA | 2.0 | 0.0 | no | 224.00 | 448.00 |

Non-Taxable: 100,355.00          Currency: USD     Line Total:     100,355.00
    Taxable: 0.00                          0.00%    Discount:              0.00
  Tax Date: 02/28/05                              Service   10 :        0.00
                                                  Freight30  20 :      192.57
  1    0.000%    2    0.000%    3    0.000%    Special   30 :        0.00
        0.00            0.00            0.00    Total Tax:             0.00
                                                        Total:    100,547.57

Wire Transfer Information:        Compumedics USA, Ltd         JPMorgan Chase Bank
   Account 72061210183              ABA 113-000-609            Swift codes TCBKUS44

Compumedics USA Ltd:  Neuroscan Toll Free: 1-800-814-8890
7850 Paseo del Norte  Compumedics Toll Free: 1-877-717-3975
El Paso, Texas 79912  Fax: 915-845-2985
                      Web: www.neuro.com

Page  1   Compumedics Divisions:

    

## Compumedics USA Ltd Standard Terms & Conditions of Sale

1. **SUPPLY OF GOODS:** Compumedics Ltd ("Compumedics") agrees with the party to whom Compumedics supplies goods ("Customer") that, unless expressly amended in writing by Compumedics, the goods are only supplied by Compumedics on these Terms and Conditions ("Contract"). This Contract shall supersede all other conditions and agreements between the parties notwithstanding anything that may be implied or expressed transaction, including the giving of any delivery instructions or acceptance of delivery, shall be deemed to constitute acceptance by the Customer of this Contract. The terms and conditions of this Contract shall without further notice apply to all future transactions between Compumedics and the Customer whether or not this Contract is delivered or executed in the course of such transactions.

2. **QUOTATION:** A quotation or estimate by Compumedics does not constitute an offer and will remain valid for 30 business days from the date of the quotation after which it is subject to alteration or withdrawal without further notice.

3. **PRICES:** Any price lists or price indications are subject to alteration at any time. Unless otherwise stated on the attached invoice by Compumedics, all prices are ex-warehouse in US Dollars and include the costs of delivery, installation and taxes (including sales tax). All taxes payable will be charged to the Customer's account as at the date of invoice unless an approved tax exemption certificate or tax accreditation number is provided. Compumedics reserves the right to charge prices ruling as at the date of delivery.

4. **PAYMENT:** Unless otherwise agreed, payment is to be made in three part, 20% of the total order value payable on placement of the order with Compumedics, 60% of the total order value payable not thirty days from the date of shipment and invoice of the goods, with the balance of 20% of the total order value payable due immediately on receipt by Compumedics of the signed Customer Acceptance Sheet. The above payment terms do not apply to international sales which must be paid, at Compumedics' option, by telegraphic transfer at the time of placing the order to the account nominated by Compumedics or confirmed irrevocable letter of credit against documentation in the time of delivery. No discount is allowed and interest will be charged on all overdue accounts at the rate of 3% per cent calculated daily. At any time prior to delivery of the goods, Compumedics reserves the right to require the Customer to pay each part or whole of the contract price to Compumedics complete appropriate.

5. **DELIVERY:** (a) The costs of freight, delivery, unloading and transporting of the goods to their arrival at the agreed place of destination shall be borne by the Customer and the Customer shall reimburse Compumedics for all such costs which it incurs on the Customer's behalf. While Compumedics will use its best endeavours to deliver by the delivery date mentioned in any document, such date shall be indicative only and will not give rise to any legal obligation to supply on that date.
   (b) Compumedics reserves the right to deliver using any mode of transport and/or by installments. Each installment shall be deemed to be sold under a separate contract, provided always however that Compumedics may suspend delivery whilst payment is overdue in respect of any previous installment.
   (c) The Customer is deemed to accept delivery of the goods when the goods are placed at the Customer's disposal at the agreed place of destination, namely, when the goods are available for collection at Compumedics' warehouse if sold "ex-warehouse" or, when Compumedics has loaded the goods into the charge of the agreed carrier if sold "FCA Compumedics store", notwithstanding that delivery of the goods may be suggested or that the Customer may not have signed a receipt for the goods.
   (d) If the Customer is unable or fails to accept delivery of the goods. Compumedics may deliver the goods to a place of storage nominated by the Customer and failing such nomination to a place nominated by Compumedics and the Customer shall be liable for all costs incurred by Compumedics in transporting the goods to, and storage at, such nominated place. Such delivery shall, for the purpose of clause 5(c) above be deemed to be delivered.

6. **CLAIMS & RETURNS:** (a) Upon delivery of the goods or any part thereof, the Customer will inspect the goods and within fourteen (14) days deliver to Compumedics notice in writing of any claim against Compumedics. If no such notice is received by Compumedics within the said period of fourteen (14) days, the goods shall be deemed to be in all respects in accordance with the order and the Customer shall be bound to accept and pay for the same accordingly and, subject to clause 9 the Customer shall have no claims against Compumedics.
   (b) The failure of any advice or the rejection by the Customer of any goods delivered or part thereof shall not vitiate or affect this Contract regarding the balance of the goods to be delivered, and Payment thereof.
   (c) Other than to and at the sole option of Compumedics without the prior written approval of Compumedics and then only on such terms as Compumedics may require.

7. **DELAY:** Compumedics is not liable for failure or delay in performance caused wholly or partly by unavailability of freight or shipping space, failure of manufacturer/supplier in supply whole or part of the goods in act of war, fire, explosion, accident, breakdown of machinery, rioting civil or industrial disturbances, strikes or lockouts, shortage of labour or the to any other circumstances, whether of a similar nature or beyond the control of the Compumedics. In the event of any such failure or delay, Compumedics may, at its discretion, terminate whole or any part of any order or postpone its performance.

8. **RISK AND TITLE:** Until payment in full of all monies owing by the Customer to Compumedics on any account whatsoever:
   (a) the risk in the goods shall not pass to the Customer and the Customer shall keep the goods as bailee for Compumedics. The goods shall nevertheless be at the risk of the Customer from the time of delivery, and the Customer shall insure Compumedics against all loss or damage to the goods however occurring after such time;
   (b) the Customer must know the goods so as to clearly identify them as the property of Compumedics, and ensure that the Customer is not, nor is deemed to be, a reputed owner of the goods;
   (c) the Customer irrevocably authorizes Compumedics as its servant or agents to enter the Customer's premises and recover and dispose of the goods and the Customer will not make any claims against Compumedics in respect of such entry or disposal. The Customer appoints Compumedics as its attorney to do all such acts and things as are necessary to enable Compumedics to recover and dispose of the goods;
   (d) the Customer shall hold the goods in a fiduciary capacity and may only sell the goods in the ordinary course of business as agent for Compumedics. Furthermore, the Customer must hold the proceeds of any such sale in a fiduciary capacity for, and to the account of, Compumedics and the Customer must take all steps necessary to keep such proceeds separate from other monies and pay over such proceeds to Compumedics to the extent necessary to discharge its full the Customer's indebtedness to Compumedics.

9. **GUARANTEE & WARRANTIES:** (a) All parts manufactured and supplied by Compumedics (excluding software or unless otherwise stated on the attached invoice) carry a guarantee against defects in materials and workmanship for a period of 12 months from the date of delivery ("Guarantee Period"). Defective parts must be accepted and, subject always to the other provisions of this clause 9. At Compumedics' option, defective goods may be replaced, repaired or refunded in accordance with this sub-clause. If the wear and tear or quality for this guarantee, a claim must be made in writing and received by Compumedics within the Guarantee Period and, must be returned at the Customer's cost in the manner directed by Compumedics failing which, this guarantee shall not apply and Compumedics shall be discharged from all liability under this sub-clause.
   (b) Any advice, recommendations, information, assistance or service provided by Compumedics in relation to the goods of their use will be given in good faith. Compumedics only undertakes that the goods sold pursuant to this Contract, will correspond to the description (if any) in the latest issue of the manufacturer/supplier's applicable label, data sheet or brochure relating to the class of goods and that the Customer will be given a good legal use. The Customer shall be responsible for ensuring the fitness of the goods for the Customer's application. All other warranties, conditions, liabilities (including negligence) or representations in relation to, inter alia, the quality or fitness of the goods, their compliance with description, or their fitness to application (other than any being or giving rise to non-excludable rights under any laws of the United States of America) whether made by Compumedics or its agent or otherwise, are hereby expressly negated and excluded. Compumedics' liability to the Customer for breach of any such non-excludable rights or pursuant to any express warranty of this Contract, will be limited, in so far as the law permits and may legally be done, at Compumedics' option, to refunding the price of the goods in respect of which the breach occurred, or the repair or replacement of those goods, or in relation to the provision of advice or services by Compumedics, refunding the price of such advice or services in respect of which the breach occurred, or the provision of such advice or services again.
   (c) Notwithstanding any other provision of this Contract, Compumedics will not be liable for any special, indirect, incidental or consequential loss or damage (including any loss of profits) whether arising from negligence, breach of contract, statute or otherwise in connection with or arising out of or in any way related to the goods, or the provision by Compumedics, of advice or services as the case may be, pursuant to this Contract.
   (d) Except as otherwise stated in this Contract, the Customer undertakes that it will not at any time seek to rely on any term, condition, warranty, guarantee or representation as against Compumedics or any officer, servant, contractor or agent of Compumedics.
   (e) The Customer acknowledges that no officer or employee of Compumedics is authorized or permitted to make or give any undertaking, warranty, statement, assertion, admission or other representation in relation to goods or services supplied by Compumedics other than in accordance with this Contract except without the prior, written authority of the Managing Director of Compumedics or his authorized representative.

10. **TERMINATION:** If the Customer fails to comply with any of the terms of this Contract or fails to make payment for goods as and when they fall due; or if the Customer becomes bankrupt or insolvent; or if the Customer (being a company) goes into liquidation or provisional liquidation, has a receiver appointed, or, if in the opinion of Compumedics, the Customer is no longer able to meet its debts as and when they fall due, Compumedics may in its absolute discretion suspend or postpone any delivery for any loss or damage suffered by the Customer in that regard, or terminate this Contract by notice in writing to the Customer. Upon termination, Compumedics shall be entitled to recover all costs incurred by it including, without limitation, payment for all deliveries already made and the cost of materials already obtained or which Compumedics may have under law in this Contract. Termination pursuant to this clause shall not affect any other rights or remedies of Compumedics which have arisen before such termination.

11. **PALLETS/CONTAINERS:** (a) Any pallets or containers owned by Compumedics and used for the delivery of goods remain the sole property of Compumedics and are to be returned in good order and condition to Compumedics or any of its agents upon request at the direction of Compumedics at the Customer's expense.
   (b) In the event that pallets or containers in which goods are delivered are not owned by Compumedics ("Hire Equipment"), the Customer will return the Hire Equipment to Compumedics in good order and condition and in the Customer's expense within 1 month of delivery and the Customer shall indemnify Compumedics for all liability, costs and damages however caused relating to that Hire Equipment.
   (c) Any pallets or containers not returned in accordance with this clause may, at the election of Compumedics, be deemed to be purchased by the Customer and shall then be promptly paid for (in full) by the Customer at a value determined by Compumedics.

12. **RESALES AND USES:** (a) Customers are responsible for obtaining, at their expense, any licenses, permits or authorizations required under any regulations in force within the country of export and destination of the goods. Particularly, U.S. Federal law may restrict the sale of certain of Compumedics' goods to registered and licensed physicians. Compumedics reserves the right to refuse to supply or cancel this Contract in whole or in part if it considers that the Customer has not provided satisfactory evidence of any such applicable licenses, permits or authorizations.
   (b) On any resale, the Customer must ensure that the transferee holds all applicable licenses and, will inform the transferee of such restrictions. Systems comprising Compumedics' goods must be sold as complete systems. Parts must not be sold separately.

13. **SOFTWARE & SERVICES:** (a) Any software supplied by Compumedics shall be subject to and on the conditions set out in Compumedics' End-User License Agreement.
   (b) Any services performed by Compumedics in connection with or in any way associated with the supply of goods shall be subject to and on the conditions set out in Compumedics' Service Contract. Notwithstanding, any services provided to the Customer are subject to a change by Compumedics and Compumedics reserves the right at any time to refuse to perform any services.

14. **INTELLECTUAL PROPERTY:** Goods offered for sale by Compumedics may be the subject of patents, registered designs, trademarks or other proprietary and legal protection and the Customer will immediately notify Compumedics of any suspected infringement of such rights. To the best of Compumedics' knowledge, goods sold do not infringe any patent, trademark, registered design or copyright of any third party.

15. **FURTHER PROVISIONS:**
   (a) The Customer may not, without Compumedics' prior written approval, assign or transfer or purport to assign or transfer this Contract or the benefit thereof to any person.
   (b) No indulgence or forbearance extended to the Customer shall limit or prejudice any other rights of claim to Compumedics.
   (c) The supply of goods by Compumedics shall not confer any right upon the Customer to use any Compumedics' trademark or trade name without Compumedics' written consent and at all times such marks or names shall remain the property of Compumedics.
   (d) If any provision or part of a provision of this Contract should be held unenforceable or in conflict with the law of any relevant jurisdiction, then it shall be read down or severed to the minimum extent necessary to render it enforceable and valid, and if incapable of being read down it shall be severed from the remainder of the Contract which shall not be affected by such severance.
   (e) The rights and obligations of the parties under this Contract shall not be governed by the United Nations Convention on Contracts for the International Sale of Goods (1980).
   (f) This contract shall be governed by the laws of the United States of America and the parties hereby submit to the non-exclusive jurisdiction of the Courts and tribunals of the said Country.

EXHIBIT
6

## GUARANTY OF CORPORATION

IN CONSIDERATION of the sum of One ($1.00) Dollar, cash in hand paid, the receipt and sufficiency of which is hereby acknowledged, and the benefits hereby acknowledged to be flowing to the undersigned (and each of them if more than one, herein called "Guarantor") from any Synovus Master Lease and any related schedules and agreements (collectively, the "Agreement") heretofore or hereafter made between Synovus Leasing Company and South Alabama Sleep Center, Inc. ("Principal"), the Guarantor agrees as follows:

I.        **Character of Obligation.**  The Guarantor hereby jointly and severally unconditionally guarantee(s) the prompt and satisfactory performance by the Principal of all covenants, agreements and obligations of the Principal contained in the Agreement, any renewals, supplements and extensions thereof and any present and future agreements between Synovus Leasing Company and the Principal and any and all debts or obligations of the Principal to Synovus Leasing Company (all of which obligations and debts are hereinafter referred to as the "Obligations") and that all sums payable by the Principal under the Agreement and the Obligations will be promptly paid when due in accordance with the provisions thereof.  The obligation of the undersigned hereunder is primary and unconditional and shall be enforceable before, concurrently, or after any proceeding by Synovus Leasing Company again any security, and shall be effective regardless of the solvency or insolvency of the Principal at any time, the extension or modification of the Obligations by operation of law, or the subsequent reorganization, merger, or consolidation of the Principal, or any other change in its composition, nature, personnel, or location.

Guarantor further agrees to pay (i) all expenses paid or incurred by Synovus Leasing Company in attempting to collect the amounts owed by the Principal pursuant to the Agreement or the Obligations, including attorneys' fees of 15% of the amounts sought to be collected, if attempt is made by Synovus Leasing Company to collect such amounts by law or through an attorney-at-law; (ii) all expenses paid or incurred by Synovus Leasing Company in collecting this Guaranty, including attorneys' fees of 15% of the amounts sought to be collected if this Guaranty is collected by law or through an attorney-at-law; and (iii) all expenses paid or incurred by Synovus Leasing Company in the enforcement of any obligations of the Principal under the Agreement of the Obligations.

II.        **Consent and Waiver.**  The undersigned waives notice of acceptance hereof, creation of any of the Obligations, nonpayment or default by the Principal under any of the Obligations or any agreement now or hereafter existing between the Principal and Synovus Leasing Company, presentment, demand, notice of dishonor, protest, and any other notices whatever.  The undersigned, without affecting its liability hereunder, consents to and waives notice of all changes of terms of the Obligations, the withdrawal or extension of credit, the release of the whole or any part of the obligations, renewal, indulgence, settlement, compromise, or failure to exercise due diligence in collection, the acceptance or release of security, extension of time to pay for any period whether or not longer than the original period, or any surrender, substitution or release of any other person directly or indirectly liable for any of the Obligations or any collateral security given by the Principal.  The undersigned waives the provisions of O.C.G.A. $ 10-7-24.

The undersigned also consents to and waives notice of any arrangements or settlements made in or out of court in the event of receivership, liquidation, readjustment, any proceeding under Title 11 of the United States Code (entitled "Bankruptcy") as amended, or assignment for the benefit of creditors of the Principal, and anything whatever whether or not herein specified which may be done or waived by or between Synovus Leasing Company and the Principal and any other person whose claim against the Principal has been or shall be assigned or transferred to Synovus Leasing Company.

The undersigned agrees that if any notification of intended disposition of collateral or of any other act by Synovus Leasing Company is required by law and a specific time period is not stated therein, such notification, if mailed by first class mail at least five (5) days before such disposition or act, postage prepaid, addressed to the undersigned either at the address shown below or at any other address of the undersigned appearing on the records of Synovus Leasing Company, shall be deemed reasonably and properly given.

III.        **Delivery of Records.**  The undersigned shall submit to Synovus Leasing Company as of the end of each quarter, within sixty (60) days of the end of each quarter, a balance sheet and a detailed statement of profit and loss, certified by an officer of the undersigned, shall submit annually a fiscal year-end audit within one hundred twenty (120) days after such date, certified by an independent practicing certified public accountant approved by Synovus Leasing Company, and shall furnish to Synovus Leasing Company, promptly upon request, any information concerning any employee benefit plan of the undersigned as may be reasonably requested.

IV.        **Construction.**  This Guaranty shall be governed by and construed in and enforced in accordance with the laws of the State of Georgia.  The undersigned hereby consents and submits to the jurisdiction of the Courts of the State of Georgia in Muscogee County, Georgia, and the Federal District Court for the Middle District of Georgia, Columbus Division for the purposes of any suit, action or other proceeding arising out of its obligations hereunder, and expressly waives any objections it may have as to venue in any such courts.  The undersigned expressly waives trial by jury in any action brought on or with respect to this Guaranty.  Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under applicable law, said provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

V.        **Waiver and Subordination.**  Guarantor hereby waives any and all rights of subrogation, reimbursement, indemnity or contribution which Guarantor may have against Principal or any other guarantor or any other person who now or hereafter

has direct or contingent liability for all or any portion of the obligations guaranteed hereby. Any indebtedness of Principal now or hereafter held by Guarantor is hereby subordinated to the obligations and indebtedness of Principal to Synovus Leasing Company, and any indebtedness of Principal to Guarantor, if Synovus Leasing Company so requests, shall be collected, enforced and received by Guarantor as trustee for Synovus Leasing Company on account of the obligations and indebtedness of Principal to Synovus Leasing Company, without affecting the liability of Guarantor under this Agreement.

      VI.    **Benefit.** This Guaranty shall bind the undersigned, its successors and assigns, and the rights and privileges of Synovus Leasing Company hereunder shall inure to the benefit of its successors and assigns, and this Guaranty shall be effective with respect to leases, loans or advances made by Synovus Leasing Company's successors and assigns to the Principal.

      IN WITNESS WHEREOF, the undersigned has executed this Guaranty and has caused its seal to be affixed by its duly authorized officer this ___07___ day of ___Feb___, 2005.

Corporate Seal

                                                  **GUARANTOR:**

                                                **Mantrust, Inc.**

ATTEST:

    _Mustafain Meghni_

_____

      Secretary

                                                  By: _____

                                                  Mustafain Meghani

                                                  Title: Administrator

                                                  Address: 548 Westgate Parkway, Dothan, AL  36303

                                                  FIN: 65-0541532



EXHIBIT
7

# GUARANTY OF INDIVIDUAL(S)

IN CONSIDERATION of the sum of One ($1.00) Dollar, cash in hand paid, the receipt and sufficiency of which is hereby acknowledged, and the benefits hereby acknowledged to be flowing to the undersigned (and each of them if more than one, herein called "Guarantor") from any Synovus Master Lease Agreement and any related schedules or exhibits (collectively, the "Agreement") heretofore or hereafter made between Synovus Leasing Company and South Alabama Sleep Center, Inc. ("Principal"), the Guarantor agrees as follows:

I.  **Character of Obligation.**  The Guarantor hereby jointly and severally unconditionally guarantee(s) the prompt and satisfactory performance by the Principal of all covenants, agreements and obligations of the Principal contained in the Agreement, any renewals, supplements and extensions thereof and any present and future agreements between Synovus Leasing Company and the Principal and any and all debts or obligations of the Principal to Synovus Leasing Company (all of which obligations and debts are hereinafter referred to as the "Obligations") and that all sums payable by the Principal under the Agreement and the Obligations will be promptly paid when due in accordance with the provisions thereof.  The obligation of the undersigned hereunder is primary and unconditional and shall be enforceable before, concurrently, or after any claim or demand is made or suit is filed against the Principal or any other guarantor or surety, and before, concurrently, or after any proceeding by Synovus Leasing Company against any security, and shall be effective regardless of the solvency or insolvency of the Principal at any time, the extension or modification of the Obligations by operation of law, or the subsequent reorganization, merger, or consolidation of the Principal, or any other change in its composition, nature, personnel, or location.

Guarantor further agrees to pay (i) all expenses paid or incurred by Synovus Leasing Company in attempting to collect the amounts owed by the Principal pursuant to the Agreement or the Obligations, including attorneys' fees of 15% of the amounts sought to be collected, if attempt is made by Synovus Leasing Company to collect such amounts by law or through an attorney-at-law; (ii) all expenses paid or incurred by Synovus Leasing Company in collecting this Guaranty, including attorneys' fees of 15% of the amounts sought to be collected if this Guaranty is collected by law or through an attorney-at-law; and (iii) all expenses paid or incurred by Synovus Leasing Company in the enforcement of any obligations of the Principal under the Agreement of the Obligations.

II.  **Consent and Waiver.**  The undersigned waives notice of acceptance hereof, creation of any of the Obligations, nonpayment or default by the Principal under any of the Obligations or any agreement now or hereafter existing between the Principal and Synovus Leasing Company, presentment, demand, notice of dishonor, protest, and any other notices whatever.  The undersigned, without affecting its liability hereunder, consents to and waives notice of all changes of terms of the Obligations, the withdrawal or extension of credit, the release of the whole or any part of the obligations, renewal, indulgence, settlement, compromise, or failure to exercise due diligence in collection, the acceptance or release of security, extension of time to pay for any period whether or not longer than the original period, or any surrender, substitution or release of any other person directly or indirectly liable for any of the Obligations or any collateral security given by the Principal.  The undersigned waives the provisions of O.C.G.A. § 10-7-24.

The undersigned also consents to and waives notice of any arrangements or settlements made in or out of court in the event of receivership, liquidation, readjustment, any proceeding under Title 11 of the United States Code (entitled "Bankruptcy") as amended, or assignment for the benefit of creditors of the Principal, and anything whatever whether or not herein specified which may be done or waived by or between Synovus Leasing Company and the Principal and any and any other person whose claim against the Principal has been or shall be assigned or transferred to Synovus Leasing Company.

The undersigned agrees that if any notification of intended disposition of collateral or of any other act by Synovus Leasing Company is required by law and a specific time period is not stated therein, such notification, if mailed by first class mail at least five (5) days before such disposition or act, postage prepaid, addressed to the undersigned either at the address shown below or at any other address of the undersigned appearing on the records of Synovus Leasing Company, shall be deemed reasonably and properly given.

III.  **Delivery of Records.**  The undersigned shall submit to Synovus Leasing Company as of the end of each calendar year a balance sheet signed by the undersigned.

IV.  **Construction.**  This Guaranty shall be governed by and construed in and enforced in accordance with the laws of the State of Georgia.  The undersigned hereby consents and submits to the jurisdiction of the Courts of the State of Georgia in Muscogee County, Georgia, and the Federal District Court for the Middle District of Georgia, Columbus Division for the purposes of any suit, action or other proceeding arising out of its obligations hereunder, and expressly waives any objections it may have as to venue in any such courts. The undersigned expressly waives trial by jury in any action brought on or with respect to this Guaranty. Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under applicable law, said provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

V.    **Waiver and Subordination**.  Guarantor hereby waives any and all rights of subrogation, reimbursement, indemnity or contribution which Guarantor may have against Principal or any other guarantor or any other person who now or hereafter has direct or contingent liability for all or any portion of the obligations guaranteed hereby.  Any indebtedness of Principal now or hereafter held by Guarantor is hereby subordinated to the obligations and indebtedness of Principal to Synovus Leasing Company, and any indebtedness of Principal to Guarantor, if Synovus Leasing Company so requests, shall be collected, enforced and received by Guarantor as trustee for Synovus Leasing Company on account of the obligations and indebtedness of Principal to Synovus Leasing Company, without affecting the liability of Guarantor under this Agreement.

VI.    **Benefit**.  This Guaranty shall bind the undersigned, its successors and assigns, and the rights and privileges of Synovus Leasing Company hereunder shall inure to the benefit of its successors and assigns; and this Guaranty shall be effective with respect to leases, loans or advances made by Synovus Leasing Company's successors and assigns to the Principal.

IN WITNESS WHEREOF, the undersigned has executed this Guaranty and if a Corporation has caused its seal to be affixed by its duly authorized officer this _07_ day of _Feb., 2005_

Date

Sign Here

**GUARANTOR:**

_____
(Signature)

Shakir R. Meghani

201 Cedar Chase

Dothan, AL  36303
SSN:  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

Sworn to and subscribed before me this
_07_ day of _February, 2005_

_Hasnain Yaseen Megha..._
Notary Public

Notarize

**My Commission Expires
August 12, 2008**

Sign Here

**GUARANTOR:**

_____
(Signature)

Mustafain Meghani

101 Prince Court

Dothan, AL  36305
SSN:  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

Sworn to and subscribed before me this

_07_ day of _February, 2005_

_Hasnain Yaseen Meghani_
Notary Public

Notarize

**My Commission Ex~~
August 12, 2008**



## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

COLUMBUS BANK AND TRUST      \*
COMPANY, doing business as
SYNOVUS LEASING COMPANY,      \*

     Plaintiff,      \*

                         Case No. 07-00803

vs.      \*

SOUTH ALABAMA SLEEP CENTERS,      \*
INC.; SHAKIR R. MEGHANI;
MANTRUST, INC., also known as      \*
MANTRUST OF ALABAMA, INC.,
doing business as SOUTHEAST      \*
PSYCHIATRIC SERVICES;
MUSTAFAIN MEGHANI; and SYED      \*
HUSSAIN,
     \*
     Defendants.

### AFFIDAVIT OF LAWRENCE B. VOIT

STATE OF ALABAMA
COUNTY OF MOBILE

My name is Lawrence B. Voit. I am attorney of record for the Plaintiff in this action. I have

personal knowledge of the facts set forth in this affidavit.

1. The Defendants South Alabama Sleep Centers, Inc.; Shakir R. Meghani; Mantrust, Inc.,

also known as Mantrust of Alabama, Inc., doing business as Southeast Psychiatric Services; and

Syed Hussain, were duly served with the summons, together with a copy of the Plaintiff's

complaint, on September 12, 2007. More than twenty days have elapsed since the date on which

each of the said Defendants was served with the summons and a copy of the complaint.

2. That the said Defendants have failed to answer or otherwise defend as to the Plaintiff's

complaint, or serve a copy of any answer or other defense which any of them might have upon the

undersigned attorney of record for the Plaintiff.

3. This affidavit is executed in accordance with Rule 55 of the Federal Rules of Civil

Procedure for the purpose of enabling the Plaintiff to obtain an entry of default against each of the

said Defendants for their failure to answer or otherwise defend as to the Plaintiff's complaint, and

for a default judgment against the said Defendants to be entered by the Court pursuant to Rule

55(b)(2) of the Federal Rules of Civil Procedure.

Lawrence B. Voit

Sworn to and subscribed before me
on this the _____ day of November, 2007

Lauren M. McDonald
Notary Public, State at Large
My Commission Expires: _____ MY COMMISSION EXPIRES JUNE 23, 2010



EXHIBIT

C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

COLUMBUS BANK AND TRUST      *
COMPANY, doing business as
SYNOVUS LEASING COMPANY,      *

        Plaintiff,             *

vs.                          *

SOUTH ALABAMA SLEEP CENTERS,      *
INC.; SHAKIR R. MEGHANI;
MANTRUST, INC., also known as      *
MANTRUST OF ALABAMA, INC.,
doing business as SOUTHEAST      *
PSYCHIATRIC SERVICES;
MUSTAFAIN MEGHANI; and SYED      *
HUSSAIN,
                               *

        Defendants.

Case No. 07-00803

## AFFIDAVIT OF LAWRENCE B. VOIT

STATE OF ALABAMA
COUNTY OF MOBILE

     1. My name is Lawrence B. Voit. I am over the age of nineteen years and give this affidavit based on my personal knowledge of the facts contained herein.

     2. I am a licensed, practicing attorney in Mobile County, Alabama, and my office is located at 4317-A Midmost Drive, Mobile, Alabama 36609. I have been engaged in private law practice since 1976. I have reviewed the pleadings and all of the legal work I performed in this case. I have also reviewed the factors regarding determination of attorney's fees in *Peebles v. Miley*, 439 So.2d 137 (Ala. 1983).

     3. Based upon my legal experience, the customary and reasonable fees for handling a case of this nature, the provision in the Master Lease agreement entitling Synovus to recover its reasonable attorney's fees and expenses from the Defendants, and the fees based on hourly charges for my legal work actually charged to our client, I believe that an attorney's fee of $9,000.00 is reasonable. Additionally, my law firm has incurred expenses of $451.00 for a private process server.

Lawrence B. Voit

Sworn to and subscribed before me
on this the 10th day of November, 2007

Notary Public, State at Large
My Commission Expires: _____     MY COMMISSION EXPIRES JUNE 23, 2010